WELTON D. HOGUE, Appellant v. MASSA et al., Respondents
LORRAINE B. HOGUE, Appellant v. MASSA et al., Respondents

(123 N.W.2d 131)

(File Nos. 10035, 10036.   Opinion filed August 20, 1963)

**Lynden D. Levitt, Earl L. Kellett,** Rapid City, for Plaintiffs and Appellants.

**Morrill & Morrill,** Sturgis, for Defendants and Respondents.

RENTTO, J. These appeals concern the right to interrogate a physician without the patient's consent on matters that are privileged under the physician-patient relationship, when his de-

position in a civil action, is taken before the trial for the purpose of discovery. The answer depends on whether there has been a waiver of the privilege.

On Saturday, June 27, 1959, Welton D. Hogue complained of severe abdominal pains. One of the defendants, Dr. Miller, an osteopathic physician was called to his home and ordered him taken to the defendant clinic for further examinations. He was there examined by Dr. Miller and the defendant Dr. Gridley, also an osteopathic physician, who ordered him hospitalized in the defendant hospital. They diagnosed his ailment as an inflamed appendix but did not rule out the possibility it might be a bowel obstruction. In the course of surgery performed on him that evening his ailment was diagnosed as a bowel obstruction which was operated on.

After several days of apparent normal convalescence his condition worsened on Wednesday afternoon and on Saturday evening he became delirious. This continued until Monday morning when he lapsed into unconsciousness at which time Dr. Lemley, a medical doctor from Rapid City, was called to the hospital. He examined the patient in the presence of Dr. Gridley and talked with the patient's wife. Apparently these two doctors had a conversation during this examination but what was said does not appear.

In the record is a copy of the following progress note by Dr. Gridley:

"July 6, 1959, A.M.—Patient critical—Dr. Lemley of Rapid City called and came up for consultation—Still do not know what has gone wrong, but believe in present condition that the electrolytic balance must be off—cannot get hourly blood chemistries here—so after consultation with Dr. Lemley (wife present) patient is to be transferred to St. John's Hospital in Rapid City and to be under care of Dr. Lemley—to be transferred immediately by a Jolley ambulance.

"/s/ J. W. Gridley, D. O."

The files of the defendant hospital contain the following notation:

### "RECORD OF CONSULTATION

"To Dr. Ray E. Lemley In re: Patient, Barney Hogue
"Request for consultation for: Diagnosis and Management

"/s/ J. W. Gridley, D. O.

"Patient seen in Sturgis Hospital in serious condition of shock, electrolyte imbalance. Recommended to be moved to St. John's Hospital in Rapid City as soon as possible.
"Date: 7/6/59

"/s/ Ray E. Lemley"

The patient's wife testified Dr. Lemley was brought into the case at her suggestion when she was advised "that he wasn't going to make it", while the defendants claim that their evidence will show that Dr. Gridley requested that Dr. Lemley be called. According to her testimony he arrived at the Sturgis hospital at 1 p.m. and the patient was in the Rapid City hospital within an hour after that. During the brief time that Dr. Lemley, Dr. Gridley and the patient were together in the Sturgis hospital no treatment or care was administered to him, but Dr. Lemley did advise his wife that he had a bowel obstruction necessitating his removal to Rapid City for emergency surgery.

After the patient's removal to Rapid City Dr. Lemley and his associate performed another operation. During his stay in this hospital he was under the care of Dr. Lemley. The defendants were not involved in his care after his removal from the Sturgis hospital. At the time of his release from the Rapid City hospital he was unable to walk or talk, apparently because of brain damage, so he was removed to the Veteran's Hospital at Ft. Meade, near Sturgis, South Dakota, for further care and treatment by the doctors there.

On June 26, 1961, Welton D. Hogue, commenced his action for damages against the defendants based on their carelessness and negligence in his care and treatment. On the same day his wife, Lorraine, instituted her action against the same defendants on the same grounds asking damages for her loss of his services, society and companionship. In both actions the plaintiffs were examined adversely under court order, and transcripts of

their testimony prepared. In Mr. Hogue's action the medical records of the Rapid City hospital pertaining to his care and treatment there were on stipulation released to the defendants and he agreed to undergo a neurological and psychiatric examination by a doctor of defendants' choice.

Thereafter motions were made in both actions by the defendants to take the deposition of Dr. Lemley concerning his care and treatment of Welton D. Hogue for the purpose of discovery. These were resisted by the plaintiffs. The orders allowing these motions provided that the doctor could be examined as to matters which would be privileged under our statute. Petitions for the allowance of appeals from these intermediate orders were granted by us pursuant to SDC 1960 Supp. 33.0706.

█ █ Depositions for the purpose of discovery are authorized by SDC 1960 Supp. 36.0501. In SDC 1960 Supp. 36.0505 it is provided that on discovery the deponent may not be examined as to any matter that is privileged. The physician-patient privilege with which we are here concerned arises by reason of SDC 1960 Supp. 36.0101(3) wherein it is stated:

"A physician or surgeon, or other regular practitioner of the healing art, cannot, without the consent of his patient, be examined in a civil action as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient;"

It expresses a long-standing public policy to encourage uninhibited communication between a physician and his patient. In the Territorial Revised Code of 1877 it appears as Sec. 499(3) of the Code of Civil Procedure. The present law is the same except that its inhibitions have been extended to any "other regular practitioner[s] of the healing art." In promulgating Section 499, the legislature declared: "There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate;".

In granting defendants' application to examine Dr. Lemley the trial court was of the view that Mr. Hogue had waived the privilege afforded him by this statute. His right to waive the protection of the statute seems unrestricted by any provision of

public policy but there is conflict in the cases as to what constitutes a waiver. Some courts favor a strict construction of the statute on the theory it is in derogation of the common law while most courts say that such statutes are remedial and should be liberally construed to carry out their policy. The differing results arrived at are often accounted for by the theory of construction applied. The courts committed to the rule of liberal construction are more inclined to protect the privilege than are those where the other rule prevails. This court apparently aligned itself with the jurisdictions which favor the strict construction of these statutes. In re Golder's Estate, 37 S.D. 397, 158 N.W. 734, 735.

■ In discussing the incompetence of a doctor as a witness under the statute in that case it wrote: "At common law he was a competent witness. A statute rendering him incompetent, being in derogation of the common law, should be strictly construed and held to apply only where the clear wording of the statute requires such a holding." In this the court was in error. The opinion makes no mention of Sec. 2472, C.C. of 1903 which provided: "The rule of the common law that statutes in derogation thereof are to be strictly construed has no application to this code. This code establishes the law of this state respecting the subjects to which it relates, and its provisions are to be liberally construed with a view to effect its objects and to promote justice." This provision now appears as SDC 65.0202(1). Consequently we must overrule the language quoted from the Golder's Estate case. In obedience to this legislative mandate it is our duty to effectuate the purposes of the statute. In other words, it is to be liberally construed in favor of the patient.

■ The only legislative enactment in our law concerning the waiver of the privilege, which obviously has no application here since Mr. Hogue has not offered himself as a witness, is contained in SDC 1960 Supp. 36.0102. That section provides:

"If a person offer himself as a witness he thereby waives any privilege he might otherwise claim, which would prevent the examination of his attorney, spiritual adviser, or healing practitioner on the same subject within the meaning of the subdivisions (2), (3), and (4), of section 36.0101. If a person once waives such privi-

lege, as to any particular communication, he cannot thereafter claim it."

This provision appeared in the 1877 Territorial Code as Section 500 of the Code of Civil Procedure. However, we do not regard this section as prescribing the exclusive means by which the privilege may be waived.

■ We hold it to be one of those rights that an individual may voluntarily surrender in other ways, either expressly or by implication, as this court indicated in Relf v. Cameron, 51 S.D. 554, 215 N.W. 881. "[B]ut it must clearly appear there is an intention to waive, and a court will not run to such a conclusion." Torbensen v. Family Life Insurance Company, 163 Cal.App.2d 401, 329 P.2d 596; Kramer v. Policy Holders Life Ins. Ass'n, 5 Cal.App.2d 380, 42 P.2d 665. The burden of establishing this is on the party asserting the claim of waiver.

Some of the authorities take the position that the bringing of an action in which an essential issue is the existence of a physical ailment should constitute a waiver. However, this is not the majority rule. 58 Am.Jur., Witnesses, § 445; 97 C.J.S. Witnesses § 310. Of late this rule has been modified in some jurisdictions by statute. See 25 A.L.R.2d 1429. It is here urged that the rule is different when the action is one for malpractice. There is support for this view. Becknell v. Hosier, 10 Ind.App. 5, 37 N.E. 580; Doll v. Scandrett, 201 Minn. 316, 276 N.W. 281. This waiver is recognized because of the manifest unfairness in permitting the patient to assail his physician's treatment and at the same time to bar the latter from giving his version of what took place and defending himself. We have recognized this rule when the party under attack is an attorney. Relf v. Cameron, supra. However, it has no application here because this action makes no complaint of Dr. Lemley's treatment of the patient.

As supporting the court's orders defendants urge the principle that a patient's waiver as to one physician is also a waiver as to other physicians. It is their position that Mr. Hogue's waiver of the privilege as to the doctors who are defendants by bringing his malpractice action against them also waives the privilege as to Dr. Lemley. Cases concerning the principle in varying cir-

cumstances are collected in 62 A.L.R. 680 and 90 A.L.R. 647. The majority rule is that if the treatments or examinations by the different physicians were at different times, and not together in consultation, there is no waiver. 62 A.L.R.681.

■■ On the matter of consultation the record, as above detailed, is not too revealing. We think the only conclusion which can fairly be drawn from it is that Dr. Lemley did not consult or collaborate with the defendant doctors in the treatment of Mr. Hogue which is the basis of his action. From Doll v. Scandrett, supra, it appears that in order for the examination or treatment of a patient by two or more doctors to constitute a consultation it must be a "unity affair." That is not the situation here. Rather, Dr. Lemley's engagement involved the condition of the patient after he had been treated by the defendant doctors and not his condition during the time they were ministering to him. No doubt when he took over the patient he inquired as to what they had done for him during their care and treatment but that does not amount to consultation with them while he was under their care.

■ Defendants' remaining contention in support of the orders appealed from involves the proposition of waiver by voluntary disclosure. In 97 C.J.S. Witnesses § 310, this rule is stated thus: "Generally, the privilege is waived whenever the person entitled to the protection of the statute voluntarily makes public matters of which a disclosure without his consent is forbidden,". They urge that when the patient released the records of the St. John's Hospital in Rapid City to the defendants by stipulation he waived any privilege that the statute might have given him as to the testimony of Dr. Lemley. Whether such records are privileged and to what extent, we need not decide, but pertaining thereto see 75 A.L.R. 393, 120 A.L.R. 1140, and Wigmore, Evidence, McNaughton Rev., 2382(3).

Even assuming the validity of this principle of waiver we are unable to say that the release of these documents has the effect claimed because the record on this appeal does not reveal any of the information which they contain. For all we know they may be devoid of any information acquired by Dr. Lemley in attending Mr. Hogue which was necessary to enable him to pre-

scribe or act for his patient. These circumstances do not establish a waiver of the privilege.

We realize that the privilege statute and its liberal construction have been severely criticized by eminent legal writers. See Wigmore, Evidence, McNaughton Rev. 2380(a) and McCormick on Evidence, § 108. Their views are urged and relied on by the defendants. However, with us these are matters of legislative mandate. See Marfia v. Great Northern Ry. Co., 124 Minn. 466, 145 N.W. 385. Accordingly we are not free to mold our law to their views.

There is widespread dissatisfaction with these statutes. The National Conference of Commissioners on Uniform State Laws proposed that this privilege should not be recognized. See its Handbook (1950) 150 - 151. The Model Code of Evidence grants the privilege but the exceptions render it of little practical significance. Rules 220-223. A number of states do not have the privilege, McCormick, supra, § 101, and many that do have revised it by amendment. But these also are legislative matters. More recently it has been suggested that rather than amend the privilege statute to extend the waiver doctrine, it would be wiser to amend the discovery statutes to provide for pretrial discovery of matters that are privileged thereunder. Neb.L.Rev. Vol. 34, p. 517. These are challenging innovations as to which we express no opinions.

Reversed.

Al the Judges concur.