Wayne VANDENBURG, Plaintiff-Appellee,

v.

NEWSWEEK, INC., Defendant-Appellant.

No. 29451.

United States Court of Appeals, Fifth Circuit.

April 5, 1971.

---

Schuyler B. Marshall, Richard Munzinger, Scott, Hulse, Marshall & Feuille, El Paso, Tex., Leo P. Larkin, Jr., Stanley Godofsky, Royall, Koegel & Wells, New York City, for defendant-appellant.

Francis C. Broaddus, Jr., Bert Williams, Mayfield, Broaddus & Perrenot, El Paso, Tex., for plaintiff-appellee.

Before RIVES, AINSWORTH and MORGAN, Circuit Judges.

PER CURIAM:

Newsweek, Inc., the defendant in this libel suit, takes this interlocutory appeal pursuant to 28 U.S.C.A. § 1292(b) from a judgment of the district court denying its motion for summary judgment. We affirm and remand the case for trial.

The alleged libel resulted from an article, "The Angry Black Athlete," which was published as the cover story for Newsweek's July 15, 1968 issue. The article related generally to the effect of the so-called black power movement on college and university athletics. Vandenburg's claim is based on the following paragraphs:

"It is a mess that extends from Niagara to the University of California, from Michigan State to the University of Texas at El Paso. Sometimes the racial issue is inflamed by a coach's get-tough policy. 'I could give in to a lot of Negro demands,' says one

Southwestern track coach, 'and keep my team intact. But someone has to hold the line against these people.'

"At El Paso, track coach Wayne Vandenburg threatened to kick six athletes off the team if they joined the boycott of the New York Athletic Club indoor meet in February. The Club was charged with discriminatory membership policies. Vandenburg won and the athletes competed. But two months later, after a talk with Harry Edwards, the same athletes refused to enter a meet at Brigham Young University in Utah because of Mormon doctrines about blacks. Vandenburg promptly dropped champion long-jumper Bob Beamon and five others from the squad."

On this interlocutory appeal our task differs radically from our duty on an appeal from a final judgment.[1] Here, we do not review a finding of actual malice, but simply an interlocutory order to the effect that Newsweek has failed to show that there is no genuine issue as to any material fact and to show further that it is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. The burden of so showing rests on the moving party, Newsweek, and "the inferences to be drawn from the underlying facts contained in [the material presented] must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 1962, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176; Gauck v. Meleski, 5 Cir. 1965, 346 F.2d 433, 436.

In cases involving First Amendment freedoms, the D. C. Circuit has suggested that summary judgments should be granted not "too restrictively" for the purpose of avoiding "long and expensive litigation productive of nothing, and curbing the danger that the threat of such litigation will be used to harass or to coerce a settlement." Washington Post v. Keogh, 1966, 125 U.S.App.D.C. 32, 365 F.2d 965, 968; see also Thompson v. Evening Star Newspaper Co., 1968, 129 U.S.App.D.C. 299, 394 F.2d 774. The Second Circuit has distinguished those holdings as "cases in which the non-moving party failed to file affidavits or other papers to refute the moving party's affidavits and to show that a genuine issue of fact existed." Goldwater v. Ginzburg, 2 Cir. 1969, 414 F.2d 324, 337, 338, n. 21; cert. denied 396 U.S. 1049, 90 S.Ct. 701, 24 L.Ed.2d 695. Indeed, in Thompson v. Evening Star, *supra*, the court said that "Plaintiff, in effect, relied on his pleadings to create an issue of fact." 394 F.2d at 777. Similarly, in the case upon which the district court relied in suggesting an interlocutory appeal, Time, Inc. v. McLaney, 5 Cir. 1969, 406 F.2d 565, Judge Tuttle was careful to point out,

" * * * we note that in this case there is a complete absence of any indication that the writer of the article had any suspicion of the falsity of the statements made by him, and there is a total lack of proof that he had before him any contra-indications as to the correctness of his conclusions."

406 F.2d at 573.

There is no dispute that Vandenburg is a public figure and that the test for libel is that set out in New York Times v. Sullivan, 1964, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 and Curtis Publishing Co. v. Butts, 1967, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094. Newsweek does not dispute that there are facts in evidence from which a jury might find

---

[1]. If this were on final appeal by defendant, we would have "to review 'the evidence in the * * * record to determine whether it could constitutionally support a judgment' for the plaintiff. *New York Times*, *supra* [376 U.S. 254], at 284–285, 84 S.Ct. 710, 11 L.Ed.2d 686; Beckley Newspapers v. Hanks, 389 U.S. 81, 83,

88 S.Ct. 197, 19 L.Ed.2d 248; St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262; Greenbelt Pub. Ass'n. v. Bresler, 398 U.S. 6, 11, 90 S.Ct. 1537, 26 L.Ed.2d 6." Time, Inc. v. Pape, 1971, 401 U.S. 279, 91 S.Ct. 633, 28 L.Ed.2d 45.

some parts of the article false. Its sole contention is that the record as a whole does not present sufficient evidence to give rise to an issue of fact from which a jury could find "actual malice."

A statement is made with actual malice if made "with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times v. Sullivan, *supra* 376 U.S. at 280, 84 S.Ct. at 726. Proof of such a mental state must usually be inferred from circumstances difficult to develop on motion for summary judgment.

The article in question was prepared by Newsweek's Sports Editor Peter Axthelm. In February 1968, Axthelm, then a reporter for Sports Illustrated, covered the New York Athletic Club track meet referred to in the Newsweek story. At that time he interviewed Vandenburg and attempted to interview some of the athletes on his team, but they refused to speak with him. He quoted Vandenburg in his article in Sports Illustrated, as follows: "I asked each one if he wanted to come and each one said yes. There was no pressure, I told them again tonight that they could back out and I would never hold it against them." His subsequent article in Newsweek was published without any interview with Vandenburg or with any of the athletes on his team. Axthelm testified that, while he had initially believed Vandenburg's statements, subsequent events had caused him to disbelieve them, and that his doubts had been confirmed from information provided by Anita Verschoth, a free-lance sports reporter; Samuel Skinner, sports editor for a San Francisco newspaper; and Harry Edwards, a well-known former athlete who had become a leader of the "black power" movement. Vandenburg vigorously attacked the reliability of Axthelm's sources of information. The Supreme Court has held that actual malice may be inferred when the investigation for a story which is not "hot news" was

grossly inadequate in the circumstances. Curtis Publishing Co. v. Butts, *supra*, 388 U.S. at 156–158, 87 S.Ct. 1975, 18 L.Ed.2d 1094.

The two-volume, 650-odd page appendix contains extensive discovery, depositions and affidavits from which the district court might properly have concluded that Newsweek had failed to show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *See* Time, Inc. v. Ragano, 5 Cir. 1970, 427 F.2d 219.

The order denying Newsweek, Inc.'s motion for summary judgment is affirmed and the case is remanded for trial. We caution against attempting to glean from this decision any whisper of what the outcome should be on a motion for a directed verdict, on the final verdict, or on a motion for judgment n. o. v.

Affirmed and remanded.