## SCHAFFER, Appellant v. SPICER, Respondent

(215 N.W.2d 134)

(File No. 11018. Opinion filed February 15, 1974)

Morris Myers, Aberdeen, for plaintiff and appellant at oral argument.

Joseph H. Barnett of Siegel, Barnett, Schutz, O'Keefe & Ogborn, Aberdeen, for defendant and respondent.

BIEGELMEIER, Chief Justice (on reassignment).

The complaint in this action seeks to recover damages alleged to have resulted from a breach of duty of a confidential physician-patient relationship. From summary judgment granted to the defendant the plaintiff appeals.

On July 16, 1965, the plaintiff herein, Betty Schaffer, was granted a divorce from Virgil Dornbusch. Pursuant to the divorce decree, Betty was given custody of their three children. On September 8, 1966, the circuit court of Brown County entered an order approving an agreement between Virgil and Betty allowing Virgil to have custody of the children until December 1, 1966. On November 30, 1966, the circuit court issued an order to Betty to show cause why said children should not remain with Virgil for the remainder of the school year then in progress. After a hearing, the court entered judgment on April 14, 1967, granting custody of the children to Virgil. We reversed this judgment. Dornbusch v. Dornbusch, 1968, 83 S.D. 524, 162 N.W.2d 283.

The circuit court on January 10, 1969, issued an order to Virgil to show cause why he should not be adjudged in contempt for failure to deliver the children to Betty. Then on January 15, 1969, the circuit court deferred entry of this order to Virgil and required Betty to show cause on January 23, 1969, why custody of the children should not remain with Virgil. Attached to the moving papers of this latter proceeding was an affidavit of the defendant herein, Dr. Edward R. Spicer, a psychiatrist, upon which the plaintiff's claims in the present action are based.

Defendant's affidavit consisted of nearly eight papers of single-spaced typing going into extensive detail and divulging much information that he received from the physician-patient relationship while consulting and treating Betty between September 5, 1964 and September 17, 1964. The defendant delivered this affidavit to Virgil's attorney.

It is plaintiff's position that the defendant be held answerable in damages for wrongfully disclosing in his affidavit confidential information he acquired while treating her. Plaintiff relies on SDCL 19-2-3 which provides:

> "A physician or surgeon, or other regular practitioner of the healing art, cannot, without the consent of his patient, be examined in a civil action as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient."

The above statute imposes a duty upon a physician or other healing practitioner to keep confidential or privileged, information gained while in professional attendance of a patient.[1] If a practitioner of the healing art breaches that duty by making any unauthorized disclosure of confidential information he may be liable to the patient for resulting damages. Simonsen v. Swenson, 1920, 104 Neb.224, 177 N.W. 831; Quarles v. Sutherland, 1965, 215 Tenn. 651, 389 S.W.2d 249; Hammonds v. Aetna Casualty & Surety Company, 1965, D.C.Ohio, 243 F.Supp. 793.

---

1. It is undisputed that the physician-patient relationship existed between the parties at the time the defendant acquired this information.

Defendant contends that Betty consented or waived under SDCL 19-2-6 the confidential relationship by her testimony and participation in the prior divorce trial and show cause hearings and that the information in the affidavit should be published in the best interests of the children.

■ First, quoting SDCL 19-2-3, supra, then SDC 1960 Supp. 36.0101(3), the court in Hogue v. Massa, 80 S.D. 319, 123 N.W.2d 131, wrote:

> "It expresses a long-standing public policy to encourage uninhibited communication between a physician and his patient. * * * In promulgating Section 499, the legislature declared: 'There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate;' ".

The court then considered the claim that the patient had waived the privilege afforded by the statute and, in that connection, said of an earlier opinion in which it held the privilege statute should be given a strict construction, "[i]n this the court was in error." After quoting now SDCL 2-14-12, requiring a liberal construction of statutes, it concluded:

> "In obedience to this legislative mandate it is our duty to effectuate the purposes of the statute. In other words, it is to be liberally construed in favor of the patient. * * * 'it must clearly appear there is an intention to waive, and a court will not run to such a conclusion.' (citing cases) The burden of establishing this is on the party asserting the claim of waiver."

Those expressions both bind us here and meet with our approval.

We have examined the testimony and affidavits in the record before us concerning the prior divorce trial and later hearings. Betty's testimony only indicates that she consulted the defendant and he diagnosed her problems. We find no evidence on her part concerning the nature and extent of any illness or treatment, nor is there testimony relating to any communications with the defendant.

It is true that when a court is called upon to determine custody of children in a divorce or other proceeding, it must consider all circumstances, including the relative fitness of each parent to further the children's best interests and welfare. We are not concerned with what the doctor might be compelled to disclose if he were a witness giving evidence in a court of law. The affidavit was first published to a third party, Virgil's attorney at his request, and not to a court upon its order. In Hammonds v. Aetna Casualty & Surety Company, D.C. Ohio, 243 F.Supp. 793, 805, the court wrote:

> "Second, assuming, but without deciding, that the plaintiff waived the testimonial privilege because of the deposition, this 'waiver' does not authorize a private conference between doctor and defense lawyer. It is one thing to say that a doctor may be examined and cross-examined by the defense in a courtroom, in conformity with the rules of evidence, with the vigilant surveillance of plaintiff's counsel, and the careful scrutiny of the trial judge; it is quite another matter to permit, as alleged here, an unsupervised conversation between the doctor and his patient's protagonist. It is the opinion of this Court that the mere waiver of a testimonial privilege does not release the doctor from his duty of secrecy and from his duty of loyalty in litigation, and no one may be permitted to induce the breach of these duties."[2]

The interest of the children can be protected from the witness stand. Furthermore, as set forth below, defendant's affidavit is not properly admissible in the custody hearing for which it was intended.

There is some authority that a physician may be liable to his patient for disclosing confidential information in a judicial proceeding where the information is inadmissible in the particular case or irrelevant to the issues involved. Smith v. Driscoll, 1917,

---

2. In Alexander v. Knight, 1962, 197 Pa.Super. 79, 177 A.2d 142, the court, in speaking of the loyalty required of a doctor to his patient feature, said: "That further includes a duty to refuse affirmative assistance to the patient's antagonist in litigation." An interesting discussion of this subject appears in Furniss v. Fitchett, 1958, N.Z.L.R. 396, an opinion by the Supreme Court of Wellington, New Zealand.

94 Wash. 441, 162 P. 572. A final decree awarding custody of a child based upon an agreement or findings of the court is a judgment of the court and is conclusive between the parties if no change of circumstances affecting the welfare of the children is shown. The jurisdiction of the court cannot be invoked to inquire into the same or other facts existing at the time or prior to a former decree. The information contained in defendant's affidavit existed at the divorce trial and subsequent custody proceedings. Clearly, the information was inadmissible under our rule requiring a change of circumstances in a new proceeding to change the custody of children. Hershey v. Hershey, 1970, 85 S.D. 85, 177 N.W.2d 267. It could not be used in the show cause hearing for which it was obtained.

The physician-patient privilege expresses a long-standing policy to encourage uninhibited communication between a physician and his patient. Our legislature has provided for waiver of this privilege under SDCL 19-2-6 when a patient testified as to any particular communication.

■ We have examined plaintiff's testimony in the record before us for the divorce action and subsequent hearings prior to publication by affidavit to Virgil's attorney. We find no testimony pertaining to communications with the defendant psychiatrist permitting waiver or consent to the publication of the information in the affidavit.

■ The complaint also alleges that the statements in the affidavit were false and malicious causing injury to plaintiff's reputation. It is not appropriate on this appeal to determine the law of defamation applicable to this publication. The issue of truth or falsity of a statement is for the trier of fact. The same is generally true when one's state of mind is involved. Vandenburg v. Newsweek, Inc., 1971, 5 Cir., 441 F.2d 378, cert. den., 404 U.S. 864, 92 S.Ct. 49, 30 L.Ed.2d 108.

Plaintiff's complaint further alleges that defendant negligently diagnosed her condition. Summary judgment is not usually suitable for negligence actions. Wilson v. Great Northern Railway Company, 1968, 83 S.D. 207, 157 N.W.2d 19; Wright & Miller, Federal Practice and Procedure, § 2729, p. 559.

It is unnecessary to determine the validity of the claims of libel and negligence alleged in the complaint. We hold the record before us does not show plaintiff waived the physician-patient privilege and the trial court erred in entering a summary judgment for defendant.

The judgment is reversed.

WOLLMAN, DOYLE and DUNN, JJ., concur.

WINANS, J., dissents.

WINANS, Justice (dissenting).

The Dornbusch divorce action has been in and out of court many times. The plaintiff in this action was Betty Dornbusch and this action is but another facet of the continuing court skirmishes. The affidavit furnished by the defendant was for use within the confines of the Dornbusch case and it was concerned with the issues of the plaintiff's mental condition and her fitness or lack thereof for the benefit of the court in awarding the custody of the children of that marriage. With respect thereto the affidavit contained details of the information acquired by the defendant from the plaintiff during his treatment of her, much of which was in the presence of her then husband and paid for by such husband. In the course of the Dornbusch case and prior to the defendant's disclosure of the information in his affidavit the plaintiff had offered herself as a witness and had testified about her three nervous breakdowns and the care of the same, about her presence in the Yankton State Hospital and the advice of her doctors there, about her mental and physical condition in general, about her hysteria and the events leading up to her breakdowns, about the fact she consulted with the defendant and received shock therapy under his direction, and about the fact that she consulted with and was treated by a psychiatrist in Michigan. The defendant's position in this case, among others, is that pursuant to SDCL 19-2-6 the plaintiff has waived any claim of privilege she may otherwise have asserted with respect to her communications with the defendant and the information he gained therefrom since she offered herself as a witness in the Dornbusch case and testified concerning her mental condition. SDCL 19-2-6 provides:

> "If a person offer himself as a witness he thereby waives any privilege he might otherwise claim, which would prevent the examination of his attorney, spiritual adviser, or healing practitioner on the same subject within the meaning of §§ 19-2-2 to 19-2-4, inclusive. If a person once waives such privilege, as to any particular communication, he cannot thereafter claim it."

In determining whether or not SDCL 19-2-6 is applicable to the present case, it is significant that. the plaintiff did not testify in the Dornbusch case about her communications with the defendant; rather, she merely testified about her mental condition in general, including the fact that she had had a nervous breakdown and that the defendant had treated her for it. Thus, the question is presented whether under SDCL 19-2-6 a patient's testimony about her ailment and about her consultation with defendant and the shock therapy she received, without further testimony concerning communication between the physician and herself, constitutes a waiver.

This court has never before considered how far a patient's testimony may extend before he may be deemed to have waived the patient-physician privilege. However, the issue was recently presented to the Supreme Court of Oklahoma in Robinson v. Lane, 1971, Okla., 480 P.2d 620. In Robinson, the plaintiff offered himself as a witness and testified as to the nature and extent of injuries he sustained in an accident. In that case, as in the present, the plaintiff did not testify concerning his communications with his physician. However, the Oklahoma court expressly reversed an earlier decision[1] and held that under a statute almost identical to SDCL 19-2-6[2] the plaintiff had waived his privilege with respect to his communications with his physician. In so holding the Court states:

> "In our opinion, when a litigant testifies concerning a particular ailment and its treatment, he has removed the reasons for the privilege. By his own conduct, he has made known to a jury and the public the ailment or dis-

---

1. See Hudson v. Blanchard, Okl., 294 P.2d 554 (1956).

2. See Okla.Stat.Ann. Tit. 12, § 385 (1960).

> ability he is suffering. After such public disclosure, there is no longer any need for the application of the privilege. We think the better rule, and the one required by the language of subsection 6, § 385, is that he has waived the privilege and the opposing party may call as witnesses any physicians who have attended him for the same ailment or disability the nature and extent of which the patient described in his testimony."

This is also the result advocated in Wigmore, Evidence In Trials at Common Law § 2389(2) at 856-859 (McNaughton Rev. 1961).

I find the reasoning of the Oklahoma Supreme Court in the Robinson case persuasive and dispositive of the present case. Accordingly, it is my conclusion that the plaintiff waived the physician-patient privilege and in effect destroyed the confidentiality of her communications with the defendant by offering herself as a witness and testifying about the same ailment for which the defendant treated her. Thus, the information contained in the defendant's affidavit was admissible in the Dornbusch case and he cannot be held liable to the plaintiff for making the disclosure.

Furthermore, of a great deal more importance to the author of this dissent is my opinion that the rights of plaintiff's children are paramount to any claim of privilege she might otherwise have.

In considering this case one should not lose sight of how it actually arose. The issue with which we are now concerned grew out of the action taken by Dr. Spicer in response to a request for information that would be ultimately used in a custody proceeding. The availability of pertinent evidence concerning the environment to which children will be exposed should be of vital importance to the courts. This Court in Huckfeldt v. Huckfeldt, 82 S.D. 344, 146 N.W.2d 57 stated:

> "The applicable legal principles are well settled by our decisions. The welfare of the children is of paramount consideration and superior to the legal rights and claims of either parent."[3]

---

3. Citing Hoaas v. Hoaas, 75 S.D. 55, 59 N.W.2d 254.

The principle "the welfare of the children is of paramount consideration" has been followed in our consideration of custody matters without fail.

Now, however, we have retreated from this position. The decision of this Court puts the rights of the parent in a superior position. The interests of the children have been relegated to a position secondary to the rights of the parent, in an attempt to determine whether or not the patient-physician privilege should apply. If this Court really intends the welfare of the children to be of paramount importance, then we should put this issue in its proper perspective. The question of whether we should invoke the patient-physician privilege in custody cases should not be of greater importance than the consideration of making available probative evidence concerning what is actually best for the welfare of the children.

Although there is but limited authority, precedent does exist for the proposition that, without any claim of consent or waiver, the physician-patient privilege must yield in a custody proceeding to the paramount rights of the infant. In People v. Fitzgerald, 40 Misc.2d 966, 244 N.Y.S.2d 441, the Supreme Court of New York so held, over objection of a husband, in granting a request by his wife in a custody proceeding for an examination by a court of the husband's hospital records containing allegedly confidential records pertaining to the psychological examination of the husband's mental condition. The Court stated:

> "The precise question as to whether the court may disregard the patient-physician privilege in a custody proceeding does not appear to have been ruled upon by the courts of this state. There is, of course, ample authority indicative of the court's right to discover the mental condition of a party in a matrimonial matter . . . Significantly, in a custody proceeding, it was intimated that even the full faith and credit clause of the United States Constitution does not prevent the court from exercising its duty for the protection of minor children. Thus, in enunciating the concept of parens patriae, the Court, in Bachman v. Mejias (1 N.Y. 2d 575, at page 581, 154 N.Y.S.2d 903, at page 907, 136 N.E.2d 866, at

page 869), held that this concept 'transcends the rule of comity' and that this rule must 'yield when it conflicts with the dominant domestic duty of the court to guard the welfare of its wards. The individual rights of infants to invoke the protection of the State in which they reside cannot be ignored.' . . .

It is thus clear to me that, in the exercise of the court's inherent power to do what is best to protect the welfare of the infant, the right of the petitioner to invoke the patient-physician privilege must yield to the paramount rights of the infant." 244 N.Y.S.2d at p. 442.

The Dornbusch marital affairs are one thing. We cannot help the situation giving rise to their troubles, nor are we under any duty to do so, but we are under an obligation which we have recognized over and over again, as have the courts in all of the states of this land, and that duty lies in doing the very best we can to see that the rights of young children are properly protected. Their welfare comes first. Dr. Spicer was exercising that same regard for the welfare of the children; at least, he was putting forth evidence which the court might consider. I recognize that affidavits have been branded by this court, rightly, as the weakest form of evidence; but nevertheless, if either side had wanted to put Spicer under oath, subject to cross-examination, with the consent of the trial court it might have been done. I cannot conceive of any trial court in South Dakota refusing such a request.

I would affirm the trial court.

