**Arnold WOLLMAN, Plaintiff and Appellee,**

v.

**Jim GRAFF, Defendant and Appellant.**

**No. 12664.**

Supreme Court of South Dakota.

Argued Oct. 12, 1979.

Decided Jan. 16, 1980.

man, appellee. The jury returned a verdict in favor of appellee, awarding him $2,000.00 compensatory damages and $5,000.00 punitive damages. Appellant's motion for a new trial was denied and he appeals. We affirm.

In late 1977 or early 1978, appellant decided to run for the town council in Irene. The Sunday before the Tuesday election which was held in April of 1978, he decided to distribute a campaign leaflet describing some of the problems he perceived in the town of Irene and with the incumbent council. Appellant composed the leaflet himself in about twenty minutes, stenciled 114 copies and mailed them to Irene residents. The alleged libel is contained in paragraph four which deals with his concerns regarding the town's law enforcement. That paragraph states:

> Speaking of law problems we have more law, per capita, than Chicago, but still continue to have the problems. We have been written up by newspapers from Minneapolis to Dallas, Texas and we have the worst law reputation of any town in the area. Continued threats and harassment by our night law enforcement officials some of which has been twenty miles from town needs changing. What is being tried is not working and needs changing. The towns of Centerville, Hurley, Parker and the Turner County commissioners have all fired our present employee, but the present commission does not have the courage to face the issue.

At the time of the publication, appellee was a part-time police officer in Irene who worked the night shift. He had never received any formal police training but had been doing part-time police work for over twenty years in various small towns. Appellee's complaint alleged that the remarks in the leaflet referred to him, damaged his reputation and subjected him to ridicule and abuse which caused him to lose the respect of the people of Irene. He resigned from his police position in Irene effective April 24, 1978, and began full-time police employment with the city of Parker, South Dakota.

Steven M. Johnson, of Brady, Kabeiseman, Reade, Abbott & Johnson, Yankton, for plaintiff and appellee.

Stanley Whiting, of Day, Grossenburg & Whiting, Winner, for defendant and appellant.

MORGAN, Justice.

This is a defamation action stemming from certain statements contained in a campaign leaflet circulated by Jim Graff, appellant, which allegedly libeled Arnold Woll-

Appellant's defense was that the statements made in the leaflet were qualifiedly privileged since he was running for a public office and appellee was a public official. He further asserted that the statements were made in good faith and in the belief that they were true.

■ We first address the issue of the sufficiency of the evidence to sustain the verdict of liability. The law in the area of defamation of public officials is dictated by the federal constitution. *Hackworth v. Larson*, 83 S.D. 674, 165 N.W.2d 705 (1969). The *New York Times* case * is the genesis for a federal rule limiting the right of a public official to recover damages for defamatory falsehoods relating to his official conduct. In essence, the rule "prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254 at 279–80, 84 S.Ct. 710 at 726, 11 L.Ed.2d 686 at 706 (1964).

■ Since then the United States Supreme Court in a series of cases has attempted to define the parameters of "actual malice" and some general rules have emerged to aid in determining whether or not "reckless disregard" exists. Malice cannot be presumed. *Hackworth v. Larson*, supra; *Rose v. Koch*, 278 Minn. 235, 154 N.W.2d 409 (1967); *Hirman v. Rogers*, 257 N.W.2d 563 (Minn.1977). Reckless conduct cannot be measured by "whether a reasonably prudent man would have published, or would have investigated before publishing." *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262, 267 (1968). The real test of whether a defendant's conduct is reckless so as to constitute actual malice is whether he "in fact entertained serious doubts as to the truth of his publication." Id. This test makes it clear that "[m]alice is more than negligence and is probably even more than 'highly unreasonable conduct.' " *Rose v. Koch*, supra, 154 N.W.2d at 427. The "reckless-disregard-of-truth" standard requires far more than proof of the absence of a reasonable belief of the truth of the statement. Id. The plaintiff must show that the false publication was made with a "high degree of awareness of . . . probable falsity." *Garrison v. Louisiana*, 379 U.S. 64, 74, 85 S.Ct. 209, 216, 13 L.Ed.2d 125, 133 (1964). Furthermore, malice cannot be proved "merely by the existence of ill will or intent to cause harm." *Rose v. Koch*, supra, 154 N.W.2d at 428; see also, *Hirman v. Rogers*, supra, and *Rosenblatt v. Baer*, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966).

The evidence showed that appellee was never fired from any law enforcement position in any of the towns listed in the leaflet or any other town, so there is no question that that statement was false. Appellant claims he had a reasonable belief upon which to base the statement, and that he placed the statements in the leaflet in a belief that they were true which forecloses a finding of "actual malice." With regard to the statement that appellee had been fired from various other positions, appellant testified that he relied mainly on statements made to him by the Turner County Auditor. She testified at trial, however, that her statements to him had been qualified in the sense that she had told him that she had heard rumors that appellee had been fired. She denied that she had referred to any specific towns from which he had been fired since she did not personally know of any.

Appellee maintained at the trial and on appeal that appellant's motive for publication of the defamatory remarks was retaliation against him because he had arrested appellant's son in November of 1977, which had highly agitated appellant. Appellee claims that appellant stated at that time that he would "take the badge off of him."

---

* *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); 95 A.L. R.2d 1412.

■ The standard of proof is whether there is clear and convincing evidence from which a jury could conclude that appellant printed the libelous statement with reckless disregard. See *Rose v. Koch*, supra, and *Hirman v. Rogers*, supra.

■ In reviewing the facts, we must view them in a light most favorable to the appellee. *Builders Supply Co., Inc. v. Carr*, 276 N.W.2d 252 (S.D.1979). It appears to us that the rumor passed on by the county auditor without naming any towns which blossomed into the statements in the leaflet, coupled with the testimony regarding appellant's threats to get appellee's badge, could in the eyes of a jury be clear and convincing evidence of actual malice.

■ On this same issue, appellant complains that he was prevented from testifying as to whether he thought the contents were true. Appellant cites no authority which directly supports his contention. Appellee, however, cites *Schaffer v. Spicer*, 88 S.D. 36, 215 N.W.2d 134 (1974), for the proposition that such testimony should not be admitted because "[t]he issue of truth or falsity of a statement is for the trier of fact [and] [t]he same is generally true when one's state of mind is involved." 88 S.D. at 41, 215 N.W.2d at 138. On the other hand, the United States Supreme Court in *St. Amant v. Thompson*, 390 U.S. 727, 732, 88 S.Ct. 1323, 1326, 20 L.Ed.2d 262, 267–268 (1968), stated:

> The defendant in a defamation action brought by a public official cannot, however, automatically insure a favorable verdict by testifying that he published with a belief that the statements were true. The finder of fact must determine whether the publication was indeed made in good faith. Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call. Nor will they be likely to prevail when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation.

Assuming, arguendo, the trial court was in error, we would hold, however, that it is harmless, since appellant was permitted to testify at great length regarding the basis for his publication.

■ The next issue we address is appellant's contention that the trial court erred in admitting hearsay evidence when he permitted appellee to testify that, at a funeral, a man commented to him that after the leaflet was circulated there was a lot of talk around town that he had been fired and was "absolutely no good anymore." Appellee never identified the man who made the statement and that man was never called to testify at trial. Appellee also testified that on several occasions kids in cars had hollered at him words to the effect that he had been fired everywhere else and they did not want him around anymore. He was again unable to identify the persons and they were not called upon to testify.

Appellee argues that the statements were not hearsay because they were not offered in evidence to prove the truth of the matter asserted, but merely to show that appellee's reputation was damaged as a direct result of the libelous statements. We agree with appellee's contention. The record supports appellee's argument that the testimony was offered only to show the extent and effect of the publication and to sustain the claim of general damage rather than to prove the truth of the matter asserted.

■ Finally, appellant attacks the sufficiency of the evidence to justify the damages. A great part of his argument relies on the inadmissibility of the so-called hearsay evidence referred to above. We have determined that that evidence was admissible and in our view that evidence, coupled with other evidence regarding loss of wages, was a sufficient basis for the jury to arrive at its verdict.

■ With respect to the verdict on punitive damages, appellant argues first of all that an award of punitive damages cannot be given in the absence of malice and, secondly, that the trial court improperly

allowed appellee to question him on his net worth. As we have held above, there was sufficient evidence for the jury to determine actual malice, and the majority rule is that evidence of a libel defendant's wealth or reputed wealth is admissible. *See Peisner v. Detroit Free Press*, 68 Mich.App. 360, 242 N.W.2d 775 (1976).

We affirm the judgment entered by the trial court on the verdict.

All the Justices concur.