**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Collins CATCH THE BEAR, Defendant,**

**In the Matter of Civil Contempt Proceedings Against Witness Bruce ELLISON, Attorney At Law, Appellant.**

**No. 14122.**

Supreme Court of South Dakota.

Argued Sept. 14, 1983.

Decided June 13, 1984.

Mikal Hanson, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Norton Tooby, Oakland, Cal., and Nancy Manning, Rapid City, Attorneys for appellant Bruce Ellison.

FOSHEIM, Chief Justice.

Attorney Bruce Ellison appeals a civil contempt order entered against him for refusing to submit to a court-ordered pretrial deposition. We affirm in part, reverse in part and remand.

Clarence Tollefson was shot and killed on July 21, 1982, on a ridge near the Yellow Thunder Camp, an American Indian encampment on Victoria Lake in the Black Hills National Forest (camp). Several hours later Bruce Ellison visited the camp.

The next morning Ellison gave a statement to a deputy sheriff at the Pennington County Sheriff's Office. He told the officer that upon returning from the federal courthouse in Rapid City a man informed him a shooting had occurred at the camp. Ellison drove directly to the camp and climbed to the top of the ridge where the victim had been shot. He said he saw the

body and a vehicle on the ridge and asked if anyone had contacted law enforcement officers. Upon learning that this had not been done, he promptly sent someone to do so. Mr. Ellison further described what he observed and what he learned from talking to people at the camp about the shooting. After making the statement at the sheriff's office, Ellison gave out several press releases and other news media disclosures concerning the incident.

In preparing to prosecute the case against the crime suspect, Collins Catch The Bear, the State subpoenaed Bruce Ellison to submit to a pretrial deposition concerning his observations and discussions at the camp before law enforcement officials arrived. Ellison resisted the subpoena on the grounds the trial court was without statutory authority to order the subpoena and that professional ethics and the lawyer-client privilege prohibited him from testifying. Ellison had been counsel in federal court for the defendants in a case entitled: "United States of America, Plaintiff, v. William Means, Mathew King, a/k/a Noble Redman, Charles Abourezk, Russell Means and All Other Persons Occupying the Location called 'Yellow Thunder Camp['] at Victoria Lake in the Black Hills National Forest, Defendants." That is a civil action brought by the United States for declaratory and injunctive relief and is not related to the Catch The Bear criminal action. The trial court ruled against Ellison on both issues and ordered him to testify.

Ellison persisted in his refusal and the trial court committed him to the Pennington County Jail "until such time as he submits to a deposition as ordered by this Court or until the end of the [Collins Catch The Bear] trial ... whichever comes first ...." Execution of the order was stayed pending disposition of this appeal.

■ A mistrial was declared early in the Catch The Bear criminal trial, and the action was dismissed with prejudice. The State argues that the contempt order is consequently moot since the Catch The Bear dismissal automatically purged any contempt. This argument would have mer-

it had the dismissal with prejudice prevailed. We have, however, reversed the prejudice part of that dismissal and remanded the case for a new trial. *State v. Catch The Bear*, 352 N.W.2d 637 (S.D. 1984). The issues posed by the subpoena for a pretrial deposition therefore remain viable.

Specifically, we must decide (1) whether the court possesses authority to order the deposition; (2) whether principles of professional ethics prohibit a lawyer from disclosing client confidences even when required by court order; (3) whether a lawyer-client privilege exists between Bruce Ellison and Collins Catch The Bear; and (4) whether a lawyer-client privilege exists between Ellison and the other members of the camp.

I.

■ Ellison contends the trial court was without authority to order him to submit to a deposition because the State did not satisfy any of the requirements of SDCL 23A–12–6 for use of a deposition at trial, namely:

At a trial or any hearing, a part or all of a deposition, so far as otherwise admissible under the rules of evidence, may be used if it appears:

(1) That a witness is dead;

(2) That the witness is out of the state, unless it appears that the absence of the witness was procured by the party offering the deposition;

(3) That the witness is unable to attend or testify because of sickness or infirmity; or

(4) That the witness is confined in jail or prison outside the state.

. . . .

Reliance on that statute is misplaced. It governs the use, not the taking, of a deposition.

The circumstances which warrant taking a deposition are identified in SDCL 23A–12–1:

Depositions shall not be ordered for discovery or any other purpose except as specifically provided by statute or rule.

*Whenever due to exceptional circumstances of the case it is in the interest of justice* that the testimony of a prospective witness of a party be taken and preserved for use at trial, the court may upon motion of such party and notice to the parties order that testimony of such witness be taken by deposition ... [emphasis added]

SDCL 23A–12–1 was adopted from Rule 15(a) of the Federal Rules of Criminal Procedure. Federal courts universally hold that discovery matters under Rule 15 are committed to the sound discretion of the trial courts and are reversible only upon a showing of abuse of discretion. *United States v. Mann,* 590 F.2d 361 (1st Cir.1978); *United States v. Richardson,* 588 F.2d 1235 (9th Cir.1978), *cert. denied,* 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979); *United States v. Rosenstein,* 474 F.2d 705 (2d Cir.1973); *United States v. Puchi,* 441 F.2d 697 (9th Cir.1971), *cert. denied,* 404 U.S. 853, 92 S.Ct. 92, 30 L.Ed.2d 92 (1971); and *United States v. Linton,* 502 F.Supp. 871 (D.C.Nev.1980). Consistent with this construction, we have held that the extent of discovery permitted by either side rests in the discretion of the court. *State v. Means,* 268 N.W.2d 802 (S.D.1978); *State v. Wade,* 83 S.D. 337, 159 N.W.2d 396 (1968).

The State's Attorney conceded that the Ellison deposition would involve discovery. The trial court nevertheless found that "exceptional circumstances" existed which made it "in the interest of justice" to preserve Mr. Ellison's testimony for trial pursuant to SDCL 23A–12–1. Mr. Ellison's assertion of the lawyer-client privilege and the extensive time needed to resolve that complex issue convinced the court that it should best be heard and decided in advance of trial. The court reasoned it would not be conducive to an expeditious trial to have jurors impaneled, jeopardy attach, and everyone sit idle while court and counsel were engrossed in preliminary matters. Moreover, it would divert the attention of all involved in the trial from the central issue of guilt or innocence. We recognize the legitimacy of these concerns. Consequently, the trial court did not abuse its discretion in ordering the pretrial deposition.

## II.

Ellison next argues that professional ethics prohibit him from submitting to the deposition. He quotes the attorney's oath: "I will maintain the confidence and preserve inviolate the secrets of my client..." SDCL 16–16–18. Additionally, SDCL 16–18–18 provides: "It is the duty of an attorney and counselor at law to maintain inviolate the confidence, and at any peril to himself to preserve the secret of his client." These maxims were adopted by supreme court rule in 1939.

Under these rules attorneys were conceivably willy nilly required to obey a subpoena to testify, thus exposing themselves to charges of unethical conduct, or to disobey the court at the risk of a contempt citation. *See Dike v. Dike,* 75 Wash.2d 1, 448 P.2d 490 (1968); American Bar Foundation, Annotated Code of Professional Responsibility 173 (1979). That unreasonable dilemma was resolved, however, by adoption of the Code of Professional Responsibility on July 21, 1970. SDCL ch. 16–18, Appx., specifically, DR 4–101(C)(2) in connection with DR 7–102(A)(3). SDCL 16–19–32 requires attorneys to follow its provisions.

Disciplinary Rule 4–101(C)(2) of the Code now provides: "A lawyer may reveal ... [c]onfidences or secrets when permitted under Disciplinary Rules or required by law or *court order*" (emphasis added). The permissive language of this rule becomes mandatory when set in juxtaposition with Disciplinary Rule 7–102(A)(3): "In his representation of a client, a lawyer shall not ... [c]onceal or knowingly fail to disclose that which he is required by law to reveal." *In re Kerr,* 86 Wash.2d 655, 548 P.2d 297 (1976); *see also United States v. Mackey,* 405 F.Supp. 854 (E.D.N.Y.1975); Annotated Code of Professional Responsibility, *supra,* at 174. It is clear that under the Code of Professional Responsibility, as adopted, no

ethical principle prohibits an attorney from submitting to a court-ordered deposition designed to discover client confidences. The most recent supreme court rule on the subject, DR 4–101(C)(2), relieves the strict ethical prohibitions of the past.

### III.

■ Even though an attorney may be ethically free to testify, his client nevertheless holds an independent confidentiality privilege. Pursuant to SDCL 19–2–4, it was the law of this state that every communication which a client made to his attorney in the course of professional employment was privileged. *Schutterle v. Schutterle*, 260 N.W.2d 341 (S.D.1977); *see also State Highway Comm. v. Earl*, 82 S.D. 139, 143 N.W.2d 88 (1966); *Austin, Tomlinson & Webster Mfg. Co. v. Heiser*, 6 S.D. 429, 61 N.W. 445 (1894). Ellison relies heavily on SDCL 19–2–4 and that line of cases. In 1979, however, SDCL 19–2–4 was repealed and this privilege was made more restrictive by our adoption of Rule 502(b), Uniform Rules of Evidence, which is now SDCL 19–13–3:

A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client.

(1) between himself or his representative and his lawyer or his lawyer's representative,

(2) between his lawyer and the lawyer's representative,

(3) by him or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein,

(4) between representatives of the client or between the client and a representative of the client, or

(5) among lawyers and their representatives representing the same client.

■ Minimum elements now necessary to invoke that privilege include: (1) a client;[1] (2) a confidential communication;[2] (3) the communication was made for the purpose of facilitating the rendition of professional legal services to the client; and (4) the communication was made in one of the five relationships enumerated in SDCL 19–13–3.

■ It is the client, not the attorney, with whom the lawyer-client privilege reposes. *State v. Means*, 268 N.W.2d 802; *see also Conforti & Eisele, Inc. v. Division of Bldg., Etc.*, 170 N.J.Super. 64, 405 A.2d 487 (1979); *State v. Doster*, 276 S.C. 647, 284 S.E.2d 218 (1981), *cert. denied*, 454 U.S. 1030, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981); *State v. Pam*, 31 Wash.App. 692, 644 P.2d 722 (1982). The burden of showing entitlement to assert the privilege rests with its claimant. *F.T.C. v. Shaffner*, 626 F.2d 32 (7th Cir.1980); *Matter of Walsh*, 623 F.2d 489 (7th Cir.1980), *cert. denied*, 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980); *In re Katz*, 623 F.2d 122 (2nd Cir. 1980); *United States v. Bump*, 605 F.2d 548 (10th Cir.1979).

■ The facts concerning the existence of a lawyer-client relationship are not privileged evidence. McCormick's Handbook of the Law of Evidence 185 (2d ed. 1972). The only evidence presented was an affidavit of Ellison setting forth his understanding of the relationship. The privilege, however, hinges not on the lawyer's perception of the relationship but on the client's belief that he is consulting a lawyer to obtain professional legal services. SDCL 19–13–3. Consequently, while the

1. SDCL 19–13–2(1) defines a client as "a person, public officer, or corporation, association, or other organization or entity either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from him."

2. A communication is confidential "if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." SDCL 19–13–2(5).

lawyer at the time of the communication is presumed to have authority to claim the privilege, SDCL 19–13–4, his own perceptions are not controlling evidence. Catch The Bear, in whom the prerogative reposed, was silent.

Ellison's counsel conceded in argument before the trial court that he could not give a concrete answer whether Collins Catch The Bear was Ellison's client on the day Ellison investigated the shooting. He argued only that there was client status on that day because Ellison represented "All Other Persons Occupying the ... Camp" (federal suit caption). The trial court specifically found that Catch The Bear was an occupant at the camp on the day of the shooting. That syllogism, however, does not substitute for hard facts showing Catch The Bear was provided professional legal services by Ellison or that he consulted Ellison with a view to obtaining professional legal services and that he had made confidential communications for the purpose of facilitating the rendition of such services. SDCL 19–13–2(1) and SDCL 19–13–3.

■■■■ The trial court found that a lawyer-client privilege did not exist between Mr. Ellison and Mr. Catch The Bear. The finding was made pursuant to SDCL 23A–18–3 (Rule 23(c), Federal Rules of Criminal Procedure), which grants a criminal court authority to find facts specially in a case tried without a jury. Findings made under Rule 23(c) shall not be set aside unless clearly erroneous. *United States v. Longee,* 603 F.2d 1342 (9th Cir.1979); *United States v. Hart,* 546 F.2d 798 (9th Cir. 1976) (en banc), *cert. denied,* 429 U.S. 1120, 97 S.Ct. 1155, 51 L.Ed.2d 571 (1977). From the dearth of evidence in support of a lawyer-client relationship, we cannot conclude that finding was clearly erroneous.

#### IV.

■■■■ The trial court focused only on the relationship between Ellison and Catch The Bear. It made no findings on the relationship between other members of the camp and Ellison concerning the communi-

cations made on the day of the shooting. Although other members of the camp were not named parties to the Catch The Bear litigation, SDCL 19–13–3 does not require that a client be party to a lawsuit to claim a lawyer-client privilege. Because the trial court did not make clear findings on the existence of the privilege with reference to the camp and its occupants we cannot assume that no privilege existed. We must therefore reverse the judgment of contempt and remand for further findings in this regard.

To facilitate the remand in this vein, we deem it advisable to address two further areas of dispute.

■■■■ Generally, statutes concerning discovery should be liberally construed. *Bean v. Best,* 76 S.D. 462, 80 N.W.2d 565 (1957). In *Schutterle,* 260 N.W.2d 341, however, we held that communications between client and lawyer are to be liberally construed in favor of being within the scope of the lawyer-client privilege created under SDCL 19–2–4. As noted, that statute was repealed and replaced with SDCL 19–13–3. The preamble to SDCL ch. 19–13 now expressly limits the scope of the privilege:

> Except as otherwise provided by Constitution or statute or by chapters 19–9 to 19–18, inclusive, or by other rules promulgated by the Supreme Court of this state, no person has a privilege to:
> (1) Refuse to be a witness;
> (2) Refuse to disclose any matter;
> (3) Refuse to produce any object or writing; or
> (4) Prevent another from being a witness or disclosing any matter or producing any object or writing.

SDCL 19–13–1. We agree with the trial court that the apparent intent was that SDCL ch. 19–13 operate less liberally for the privilege claimant than did its predecessor SDCL 19–2–4 as construed in *Schutterle.*

This application of SDCL 19–13–1 is in accord with modern authorities which hold that privileges created by statute are to be

strictly construed to avoid suppressing otherwise competent evidence. *American Nat. Watermattress Corp. v. Manville,* 642 P.2d 1330 (Alaska 1982); *United Services Auto. Ass'n. v. Werley,* 526 P.2d 28 (Alaska 1974); *Atlantic Coast Line Railroad Company v. Daugherty,* 111 Ga.App. 144, 141 S.E.2d 112 (1965); *Leer v. Chicago, M., St. P. & P. Ry. Co.,* 308 N.W.2d 305 (Minn.1981), *cert. denied,* 455 U.S. 939, 102 S.Ct. 1430, 71 L.Ed.2d 650 (1982); *Kahl v. Minnesota Wood Specialty, Inc.,* 277 N.W.2d 395 (Minn.1979); *Metalsalts Corp. v. Weiss,* 76 N.J.Super. 291, 184 A.2d 435 (1962); *Koller v. W.E. Plechaty Co.,* 6 Ohio Misc. 57, 35 O.O.2d 113, 216 N.E.2d 399 (Ohio Mun.1965). The United States Supreme Court has forcefully supported strict construction: "Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039, 1065 (1974).

The issue of waiver was also raised in the trial court. A person upon whom SDCL ch. 19–13 confers a privilege against disclosure waives that privilege if he, as the holder of the privilege, voluntarily discloses or consents to disclosure of any significant part of the privileged matter. SDCL 19–13–26 (Rule 510, Uniform Rules of Evidence); *United States v. Davis,* 636 F.2d 1028 (5th Cir.1981), *cert. denied,* 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981); *United States v. Flores,* 628 F.2d 521 (9th Cir.1980); *United States v. Bump,* 605 F.2d 548; *United States v. Cote,* 456 F.2d 142 (8th Cir.1972). Thus a lawyer-client privilege may be waived if the client voluntarily or through his attorney discloses the contents of the communication or advice to someone outside that relationship. *Bump,* 605 F.2d 548; *United States v. Grammer,* 513 F.2d 673 (9th Cir.1975). After an effectual waiver the privilege disappears and the barrier is removed. *State v. Means,* 268 N.W.2d 802; *Olshen v. McMann,* 378 F.2d 993 (2nd Cir.1967), *cert. denied* 389 U.S. 874, 88 S.Ct. 165, 19 L.Ed.2d 157; McCormick's Handbook of

the Law of Evidence, supra, at 192. The burden of establishing waiver of a privilege is on the party asserting the claim of waiver. *Hogue v. Massa,* 80 S.D. 319, 123 N.W.2d 131, 5 A.L.R.3d 1236 (1963).

Affirmed in part, reversed in part and remanded.

All the Justices concur.