494 S.E.2d 431

Sally McCORMICK, Appellant,

v.

Kent ENGLAND, M.D., and Michael Meyers, M.S.W., Defendants,

of whom Kent England, M.D., is Respondent.

No. 2751.

Court of Appeals of South Carolina.

Heard Nov. 4, 1997.

Decided Nov. 17, 1997.

Rehearing Denied Jan. 22, 1998.

628

J. Brent Kiker, of Svalina, Richardson & Larson, Beaufort, and James B. Richardson, Jr., of Svalina, Richardson & Larson, Columbia, for Appellant.

Hutson S. Davis, Jr. and Scott A. Seelhoff, both of Davis, Tupper, Grimsley & Seelhoff, Beaufort, for Respondent.

ANDERSON, Judge:

Sally McCormick filed a complaint alleging that her physician, Kent England, breached a duty of confidentiality by disclosing information about her emotional health during a divorce proceeding involving her former husband. The special circuit court judge struck the allegation from the complaint, finding it did not state a cause of action. McCormick appeals. We hold South Carolina shall recognize a cause of action for a physician's breach of a duty of confidentiality. Accordingly, we reverse and remand.

## FACTUAL/PROCEDURAL BACKGROUND

Dr. England was the family physician for McCormick, her former husband, and their children. McCormick and her husband became involved in a divorce action in which custody of the children was at issue. In support of his Motion for Emergency Relief and a Restraining Order, McCormick's husband submitted two letters to the family court regarding McCormick's emotional status. One letter was from a licensed social worker, defendant Michael Meyers, who alleged that McCormick had a severe drinking problem which caused her to be a danger to herself and to her family. The other letter was prepared by Dr. England and was addressed "To Whom It May Concern." In his letter, Dr. England diagnosed McCormick as suffering from "major depression and alcoholism, acute and chronic." Further, Dr. England stated the children had experienced school difficulties due to the family

discord caused by McCormick's drinking. He stated it was his medical opinion that McCormick was "a danger to herself and to her family with her substance abuse and major depressive symptoms," and concluded that she required hospitalization. There is no indication in the record that the letter was prepared under court order.[1]

McCormick brought this action for negligence, libel, invasion of privacy, outrage, breach of confidence, and civil conspiracy against Dr. England and Meyers. She alleged in her fifth cause of action for breach of confidence that Dr. England and Meyers had breached "a duty of non-disclosure of confidential communications with the plaintiff concerning her mental health conditions" by publishing and disseminating these confidential communications to the public "in direct contravention of South Carolina statutory law." Specifically, McCormick alleged a duty of confidentiality existed pursuant to S.C.Code Ann. § 19–11–95 (Supp.1996), entitled "Confidences of patients of mental illness or emotional conditions."

Dr. England filed a motion to strike the fifth cause of action for breach of confidence on the basis the facts alleged failed to constitute a cause of action.[2] At the hearing on the motion, McCormick additionally relied on the Physicians' Patient Records Act, S.C.Code Ann. §§ 44–115–10 to –150 (Supp.1996), which prohibits the disclosure of medical records without the patient's consent.

The judge granted the motion to strike the breach of confidence action as to Dr. England, stating, "It is well known that South Carolina does not recognize the physician-patient privilege at common law." The judge found there was no statutory duty of confidentiality alleged that was applicable to Dr. England. The judge noted that, under its terms, § 19–11–95 applies only to licensed psychologists, counselors, family therapists, social workers, and registered nurses. Therefore,

---

1. Dr. England states in his brief that he prepared his letter in lieu of attending a family court hearing, for which he had been issued a subpoena. However, his letter is dated February 21, 1995, while the date on the subpoena appears to be April 1, 1995. The trial court did not mention the subpoena.

2. This appeal concerns only the disposition of the cause of action against Dr. England.

the statute did not apply to Dr. England. Further, since the letter did not disclose any medical records as such, the judge found the "duty of confidentiality" imposed by the Records Act, §§ 44-115-10 to -150, was also inapplicable. Finally, the judge found that, in any event, there was no breach of confidence resulting from Dr. England's disclosures because "the letter was written out of necessity and for the express purpose of protecting others as well as [McCormick] herself due to her mental and emotional condition at that time."

McCormick filed a motion to alter or amend the order in which she argued that a physician's duty of confidentiality exists under the common law, and that her cause of action should not have been stricken if she was entitled to recovery under any theory. The judge denied the motion, stating he would have considered allowing McCormick to amend her pleadings to allege a cause of action for common law breach of confidence, but that he was not convinced such a duty exists since South Carolina does not recognize the physician-patient privilege. He also noted that any damages which might be recovered could be recovered under her claim for invasion of privacy. Finally, the judge found that even if a cause of action for breach of a duty of confidentiality existed, Dr. England's letter would not violate that duty "because it was necessary in the proceeding before the court for the protection of [McCormick] and her family that the information be disclosed to the court." McCormick appeals, arguing the trial court erred in finding South Carolina does not recognize the tort of breach of confidence applicable to the physician-patient relationship, in deciding an issue of first impression on a motion to strike, and in holding the publication was not a breach of the duty of confidentiality.

## ISSUE

Does South Carolina recognize a cause of action for a physician's breach of the duty of confidentiality?

## STANDARD OF REVIEW

A motion to strike which challenges a theory of recovery in the complaint is in the nature of a motion to dismiss under Rule 12(b)(6), SCRCP. A ruling on a motion to

dismiss a claim must be based solely on the allegations set forth on the face of the complaint. The motion cannot be sustained if the facts alleged and the inferences reasonably deducible therefrom would entitle the plaintiff to any relief on any theory of the case. *See Dye v. Gainey,* 320 S.C. 65, 463 S.E.2d 97 (Ct.App.1995). The question is whether in the light most favorable to the plaintiff, and with every reasonable doubt resolved in her behalf, the complaint states any valid claim for relief. The cause of action should not be struck merely because the court doubts the plaintiff will prevail in the action. *Id.* at 68, 463 S.E.2d at 99.

## LAW/ANALYSIS

 McCormick argues the trial court erred in finding South Carolina does not recognize the common law tort of breach of confidence as applied to the physician-patient relationship.[3] We agree.

Whether a separate tort action for a physician's breach of a duty of confidentiality exists under the common law is a novel issue in this state. Dr. England contends South Carolina courts have previously ruled that no duty of confidentiality exists between a physician and patient; therefore, there can be no action for its breach. He cites *Aakjer v. Spagnoli,* 291 S.C. 165, 173, 352 S.E.2d 503, 508 (Ct.App.1987), wherein this Court stated, "There is no physician-patient privilege in South Carolina."

 "At common law neither the patient nor the physician has the privilege to refuse to *disclose in court* a communication of one to the other, nor does either have a privilege

---

3. On appeal, McCormick concedes that § 19–11–95 is inapplicable to Dr. England. Further, she does not challenge the judge's finding that the Records Act, §§ 44–115–10 to –150, does not afford relief in this instance since McCormick's medical records were not disclosed. Rather, she asserts only that her cause of action should not have been stricken because a duty of confidentiality exists under the common law. Although we are aware that an issue normally may not be raised for the first time in a Rule 59 motion if it could have been raised previously, the judge addressed the common law theory in his order and no argument is raised on appeal that the issue should have been precluded from consideration. Therefore, we shall assume the issue was properly preserved.

that the communication not be disclosed to a third person." 61 Am.Jur.2d *Physicians, Surgeons, and Other Healers* § 169 (1981) (emphasis added). Although many states have statutorily created a "physician-patient testimonial privilege," South Carolina has not enacted a similar statute and does not recognize the physician-patient privilege. *Peagler v. Atlantic Coast Line R.R. Co.*, 232 S.C. 274, 101 S.E.2d 821 (1958) (statutes have been enacted in most states making communications between a physician and patient privileged from compulsory disclosure, but there is no such statute in South Carolina). However, the absence of a testimonial privilege prohibiting certain in-court disclosures is not determinative of our issue because this evidentiary privilege is distinguishable from a duty of confidentiality. As our Supreme Court recently observed in *South Carolina State Board of Medical Examiners v. Hedgepath*, 325 S.C. 166, 480 S.E.2d 724 (1997): "The terms 'privilege' and 'confidences' are not synonymous, and a professional's duty to maintain his client's confidences is independent of the issue whether he can be legally compelled to reveal some or all of those confidences, that is, whether those communications are privileged." *Id.* at 169, 480 S.E.2d at 726.

*Hedgepath* was a disciplinary proceeding against a physician rather than a private action seeking damages for breach of confidence; however, it involves facts strikingly similar to the case on appeal. In *Hedgepath*, a physician, who initially acted as the family therapist for a married couple and then as an individual therapist for the wife, prepared an affidavit for use at a family court hearing. The physician provided the affidavit to the husband's attorney without consulting or obtaining permission from the wife. The affidavit was not compelled by subpoena or other legal process. The State Board of Medical Examiners disciplined the physician for misconduct for breaching a duty of confidentiality imposed by the regulations governing the medical profession. *See* 26 S.C.Code Ann. Regs. 81–60(D) (Supp.1996) ("A physician shall respect the rights of patients ... and shall safeguard patient confidence within the constraints of the law."). The Board is authorized to discipline a physician for misconduct pursuant to S.C.Code Ann. § 40–47–200 (Supp.1996).

The circuit court reversed, finding a South Carolina physician has no ethical duty to maintain a patient's confidences.

The court reasoned that since no law prohibited the physician from making the affidavit, the regulation had not been violated.

The Supreme Court reversed and reinstated the Board's decision. The court held that a physician commits misconduct when he reveals a patient's confidences where the revelation is neither compelled by law (i.e. by subpoena or statute) nor consented to by the patient. The Supreme Court found the circuit judge erred in finding no duty of confidentiality exists in South Carolina merely because the state does not recognize the physician-patient evidentiary privilege. The court concluded the physician violated Reg. 81–60(D) when he voluntarily provided an affidavit which revealed confidences entrusted to him by the wife. The Supreme Court explained that "Reg. 81–60(D) enjoins a physician to maintain his patients' confidences within the constraints (or limitations) of the law." *Id.* at 169, 480 S.E.2d at 726. Although the Supreme Court recognized that physicians owe their patients a duty of confidentiality within the limits of the law, it did not address whether a breach of the duty is actionable as a separate tort.

### Breach of Physician's Duty of Confidentiality as Independent Tort

A person who lacks medical training usually must disclose much information to his or her physician which may have a bearing upon diagnosis and treatment. Such disclosures are not totally voluntary; therefore, in order to obtain cooperation, it is expected that the physician will keep such information confidential. *See generally* 61 Am.Jur.2d *Physicians, Surgeons, and Other Healers* § 169 (1981). "Being a fiduciary relationship, mutual trust and confidence are essential." *Id.* at § 167.

The belief that physicians should respect the confidences revealed by their patients in the course of treatment is a concept that has its genesis in the Hippocratic Oath, which states in pertinent part: "Whatever, in connection with my professional practice, or not in connection with it, I see or hear, in the life of men, which ought not to be spoken of abroad, I will not divulge as reckoning that all such should be kept secret." Taber's Cyclopedic Medical Dictionary 902 (17th ed. 1993).

The modern trend recognizes that the confidentiality of the physician-patient relationship is an interest worth protecting. *See generally* Alan B. Vickery, Note, *Breach of Confidence: An Emerging Tort,* 82 Colum.L.Rev. 1426 (1982). A majority of the jurisdictions faced with the issue have recognized a cause of action against a physician for the unauthorized disclosure of confidential information unless the disclosure is compelled by law or is in the patient's interest or the public interest.[4] *See, e.g., Hammonds v. Aetna Cas. & Sur. Co.,* 243 F.Supp. 793 (N.D.Ohio 1965); *Horne v. Patton,* 291 Ala. 701, 287 So.2d 824 (1973); *Vassiliades v. Garfinckel's,* 492 A.2d 580 (D.C.1985); *Leger v. Spurlock,* 589 So.2d 40 (La.Ct.App.1991); *Alberts v. Devine,* 395 Mass. 59, 479 N.E.2d 113 (1985), *cert. denied,* 474 U.S. 1013, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985); *Saur v. Probes,* 190 Mich.App. 636, 476 N.W.2d 496 (1991); *Brandt v. Medical Defense Assocs.,* 856 S.W.2d 667 (Mo.1993) (en banc); *Simonsen v. Swenson,* 104 Neb. 224, 177 N.W. 831 (1920); *Hague v. Williams,* 37 N.J. 328, 181 A.2d 345 (1962); *Estate of Behringer v. Medical Ctr. at Princeton,* 249 N.J.Super. 597, 592 A.2d 1251 (Law Div.1991); *MacDonald v. Clinger,* 84 A.D.2d 482, 446 N.Y.S.2d 801 (N.Y.App.Div.1982); *Humphers v. First Interstate Bank,* 298 Or. 706, 696 P.2d 527 (1985) (en banc); *Schaffer v. Spicer,* 88 S.D. 36, 215 N.W.2d 134 (1974); *Berry v. Moench,* 8 Utah 2d 191, 331 P.2d 814 (1958); *Morris v. Consolidation Coal Co.,* 191 W.Va. 426, 446 S.E.2d 648 (1994).

In the absence of express legislation, courts have found the basis for a right of action for wrongful disclosure in four main sources: (1) state physician licensing statutes, (2) evidentiary rules and privileged communication statutes which prohibit a physician from testifying in judicial proceedings, (3) common law principles of trust, and (4) the Hippocratic Oath and principles of medical ethics which proscribe the revelation of patient confidences. *Vassiliades v. Garfinckel's,* 492 A.2d 580, 590 (D.C.1985).[5] The jurisdictions that recognize the duty of

---

**4.** Some jurisdictions have rejected recovery for a physician's breach of the duty of confidentiality. *E.g., Quarles v. Sutherland,* 215 Tenn. 651, 389 S.W.2d 249 (1965).

**5.** In *Alberts v. Devine,* 395 Mass. 59, 479 N.E.2d 113, 119 (1985), *cert. denied,* 474 U.S. 1013, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985), the

confidentiality have relied on various theories for the cause of action, including invasion of privacy, breach of implied contract, medical malpractice, and breach of a fiduciary duty or a duty of confidentiality. *See generally* Judy E. Zelin, Annotation, *Physician's Tort Liability for Unauthorized Disclosure of Confidential Information About Patient,* 48 A.L.R.4th 668 (1986).

In *Horne v. Patton,* 291 Ala. 701, 287 So.2d 824 (1973), Horne's physician disclosed information to his employer, contrary to his express instructions. Horne alleged that the doctor-patient relationship was a confidential relationship which created a fiduciary duty by the doctor, that the unauthorized release of information breached the fiduciary duty, and further, that it violated the Hippocratic Oath, constituting unprofessional conduct.

The Supreme Court of Alabama held there was a confidential relationship between a physician and patient which imposed a duty upon the physician not to disclose information concerning the patient obtained in the course of treatment. The court noted that, although the state had not enacted the physician-patient testimonial privilege, this did not control the issue of liability of a physician for unauthorized extra-judicial disclosures of such information. The court stated it is "impor-

---

Supreme Judicial Court of Massachusetts observed, "The courts that have imposed on physicians a duty of confidentiality and have recognized a cause of action to enforce that duty have grounded their decisions on the determination that public policy favors the protection of a patient's right to confidentiality. Courts have found indications of that public policy in statutes creating a testimonial privilege with respect to confidential communications between a patient and a physician and in licensing statutes that authorize the suspension or revocation of a license to practice medicine if a doctor divulges a professional secret without authorization. The absence of statutes of that type, however, does not indicate that no public policy favoring a patient's right to confidentiality exists. No testimonial privilege statute existed in Alabama when the Supreme Court of Alabama decided *Horne v. Patton, supra.* Nor did such a statute exist in New Jersey when the Supreme Court of New Jersey decided *Hague v. Williams, supra.* The principle that society is entitled to every person's evidence in order that the truth may be discovered may require a physician to testify in court about information obtained from a patient in the course of treatment. However, that principle has no application to disclosures made out of court. Hence, it does not preclude a cause of action based on such disclosures."

tant that patients seeking medical attention be able to freely divulge information about themselves to their attending physician without fear that the information so revealed will be frivolously disclosed[.]" *Id.* at 829.

In *Hague v. Williams*, 37 N.J. 328, 181 A.2d 345 (1962), the Supreme Court of New Jersey stated that, ordinarily, a physician receives information relating to a patient's health in a confidential capacity and should not disclose such information without the patient's consent except where the public interest or the private interest of the patient so demands. *Id.* at 349. The court observed that it was not concerned with the physician-patient privilege because "it deals with testimony in a judicial proceeding." *Id.* at 348. The court explained the importance of the physician-patient duty of confidentiality: "A patient should be entitled to freely disclose his symptoms and condition to his doctor in order to receive proper treatment without fear that those facts may become public property. Only thus can the purpose of the relationship be fulfilled." *Id.* at 349.

In *Schaffer v. Spicer*, 88 S.D. 36, 215 N.W.2d 134 (1974), Schaffer brought an action against her psychiatrist, Dr. Spicer, for wrongfully disclosing confidential information. Dr. Spicer gave a detailed affidavit concerning Schaffer's mental health to her ex-husband's attorney during litigation seeking a change of custody of their children. Schaffer relied on a statute which provided that, unless the patient consents, a physician cannot be examined in a civil action as to any information acquired in treating the patient. *Id.* at 136. The court noted that "[t]he physician-patient privilege expresses a long-standing policy to encourage uninhibited communication between a physician and his patient." *Id.* at 138.

After noting that when a court is called upon to determine custody of children it must consider all relevant circumstances, including the fitness of each parent, the court stated that it was not concerned with what the doctor might be compelled to disclose if he were a witness giving evidence in a judicial proceeding. Rather, the court observed that the affidavit was first published to a third party, the attorney for Schaffer's ex-husband, not to a court upon its order. The court quoted with approval the case of *Hammonds v. Aetna Casualty & Surety*

*Co.,* 243 F.Supp. 793 (N.D.Ohio 1965), wherein the Ohio District Court of Appeals stated that even if a plaintiff waived a testimonial privilege, it did not authorize a private conference between a doctor and opposing counsel because there is a "duty of secrecy" and a "duty of loyalty in litigation" which should not be breached. *Id.,* 215 N.W.2d at 137. In reversing the trial court's granting of summary judgment, the Supreme Court of South Dakota concluded there was insufficient evidence that the privilege had been waived in this case. *Id.* at 137–38.

There is evidence that South Carolina has a public policy in favor of maintaining the confidentiality of physician-patient relationships. In *Hodge v. Shea,* 252 S.C. 601, 168 S.E.2d 82 (1969), our Supreme Court stated that the physician-patient relationship is a confidential relationship.[6] Further, South Carolina's legislature has recognized a physician's duty to maintain confidences gained in the course of treatment and has empowered the State Board of Medical Examiners to discipline physicians for the unauthorized disclosure of patient confidences. *See* S.C.Code Ann. § 40–47–200 (Supp.1996); 26 S.C.Code Ann. Regs. 81–60(D) (Supp.1996). In *Hedgepath,* our Supreme Court ruled that Reg. 81–60(D) required a physician to maintain patient confidences within the limits of the law. Although Reg. 81–60(D) does not in itself create *civil liability* for an unauthorized disclosure, at least one court has found that such a provision unquestionably establishes a physician's *duty* of confidentiality. *See Humphers v. First Interstate Bank,* 298 Or. 706, 696 P.2d 527, 535 (1985) (en banc) (in which the Supreme Court of Oregon stated that the actionable wrong lies in the breach of duty in a confidential relationship, whereas a statute providing for the disciplining of a physician who divulges a professional secret "only establishes the duty of secrecy in the medical relationship."). The South Carolina legislature has also recently enacted the Physicians' Patient Records Act, S.C.Code Ann. §§ 44–115–10 to –150 (Supp. 1996), which prohibits a physician's disclosure of a patient's medical records without the patient's consent.

---

6. In *Hodge,* the court recognized the physician-patient relationship was a confidential one and addressed the duty of good faith and fair dealing in financial transactions. However, the court did not discuss a duty of confidentiality that would prevent the unauthorized disclosure of patient information.

We find the reasoning of the cases from other jurisdictions persuasive on this issue and today we join the majority and hold that an actionable tort [7] lies for a physician's breach of the duty to maintain the confidences of his or her patient in the absence of a compelling public interest or other justification for the disclosure.

### Existence of Remedy for Invasion of Privacy

In the order from the motion for reconsideration, the trial court rejected the common law tort of breach of confidence, explaining, "I do not tarry too long with concern because in my opinion any damages which might be recovered if such a cause of action existed can here be recovered in the invasion of privacy cause of action." Although there may be some overlap between the two, we find the existence of a cause of action for invasion of privacy should not preclude our recognition of an independent tort for a physician's breach of confidence because the actions are distinguishable.

Invasion of privacy consists of the public disclosure of private facts about the plaintiff, and the gravamen of the tort is publicity as opposed to mere publication. The defendant must intentionally reveal facts which are of no legitimate public interest, as there is no right of privacy in public matters. In addition, the disclosure must be such as would be highly offensive and likely to cause serious mental injury to a person of ordinary sensibilities. *Snakenberg v. Hartford Cas. Ins. Co.*, 299 S.C. 164, 383 S.E.2d 2 (Ct.App. 1989).

Thus, an invasion of privacy claim narrowly proscribes the conduct to that which is "highly offensive" and "likely to cause serious mental injury." This standard is not consistent with the duty attaching to a confidential relationship because it focuses on the *content,* rather than the *source*

---

7. "[T]he duty of confidentiality, where it exists, generally arises out of broadly applicable societal norms and public policy concerning the kind of relationship at issue. It does not arise out of specific agreement or particularized circumstances. Moreover, the object of the law when this duty is violated is compensation for the resulting injuries, not fulfillment of expectation. Therefore, liability should be grounded in tort law." Alan B. Vickery, Note, *Breach of Confidence: An Emerging Tort, supra,* at 1451.

of the information. The unauthorized revelation of confidential medical information should be protected without regard to the degree of its offensiveness. The privacy standard would not protect information that happens to be very distressing to a particular patient, even though the individual would likely not have revealed it without the expectation of confidentiality. Alan B. Vickery, Note, *Breach of Confidence: An Emerging Tort, supra,* at 1441.

Further, the requirement of "publicity" is a limitation which would preclude many cases involving a breach of confidentiality. Publicity involves disclosure to the public, not just an individual or a small group. *Rycroft v. Gaddy,* 281 S.C. 119, 314 S.E.2d 39 (Ct.App.1984). *See also Swinton Creek Nursery v. Edisto Farm Credit,* 326 S.C. 426, 483 S.E.2d 789 (Ct.App.1997) (a communication to an individual or even a small group does not give rise to liability unless there is some breach of contract, trust, or confidential relationship which will afford an independent basis for relief). However, where the information disclosed is received in confidence, "one can imagine many cases where the greatest injury results from disclosure to a single person, such as a spouse, or to a small group, such as an insurance company resisting a claim. A confidential relationship is breached if unauthorized disclosure is made to only one person not a party to the confidence, but the right of privacy does not cover such a case." Alan B. Vickery, Note, *Breach of Confidence: An Emerging Tort, supra,* at 1442. The Note distinguished invasion of privacy from an action for breach of confidentiality:

> Privacy is a right against the public at large. Its doctrinal limits narrowly circumscribe the zone of proscribed conduct in order to prevent hindrance of public expression. In contrast, a right to confidentiality exists against a specific person, who, by virtue of his relationship to the confider, has notice of the duty to preserve the secrecy of clearly identifiable information. Privacy's doctrinal limits are thus unnecessary in breach-of-confidence situations, and should not bar recovery to plaintiffs deserving of a remedy.

*Id.* at 1440.

## Limitations on Liability

Although many jurisdictions recognize a cause of action for breach of the duty of confidentiality, they do not hold that this

duty is absolute. Public policy requires that where it is reasonably necessary to protect the interest of the patient or others, a physician may breach the duty to maintain patient confidentiality. The Utah Supreme Court explained, "Where life, safety, well-being or other important interest is in jeopardy, one having information which could protect against the hazard, may have a conditional privilege to reveal information for such a purpose...." *Berry v. Moench,* 8 Utah 2d 191, 331 P.2d 814, 817–18 (1958). *See also Mull v. String,* 448 So.2d 952 (Ala.1984) (disclosure of patient information allowed when patient's health is at issue in litigation); *Simonsen v. Swenson,* 104 Neb. 224, 177 N.W. 831 (1920) (disclosure of information about a highly contagious disease is privileged and not a breach of the duty of confidentiality). In *Saur v. Probes,* 190 Mich.App. 636, 476 N.W.2d 496, 499–500 (1991), the Michigan Court of Appeals found "[t]he issue whether the disclosures were reasonably necessary to protect the interests of [the] plaintiff or others is one for the jury [where] the facts are such that reasonable minds could differ." In *Estate of Behringer v. Medical Center at Princeton,* 249 N.J.Super. 597, 592 A.2d 1251, 1268–69 (Law Div.1991), the New Jersey court discussed a variety of exceptions to the duty of confidentiality.

In South Carolina, our legislature has determined that, under certain circumstances, the public interest may demand disclosure of information gained by physicians in their professional capacity. *See, e.g.,* S.C.Code Ann. § 20–7–510 (Supp. 1996) (physicians receiving information in their professional capacity that a child may have been physically or mentally abused or neglected must report the abuse); S.C.Code Ann. § 20–7–540 (Supp.1996) (providing persons required to report child abuse pursuant to § 20–7–510 are immune from civil and criminal liability which might otherwise result and that the person's good faith compliance is rebuttably presumed); S.C.Code Ann. § 20–7–550 (Supp.1996) (abrogating "[t]he privileged quality of communication" between any professional person and his or her patient for reports made regarding the abuse or neglect of children); S.C.Code Ann. § 44–29–146 (Supp.1996) (stating "[a] physician or state agency identifying and notifying a spouse or known contact of a person having ... (HIV) infection or ... (AIDS) is not liable for damages resulting from the disclosure."). Statements that the physi-

cian is "immune from civil ... liability" and "is not liable for damages resulting from the disclosure" constitutes an implicit recognition of liability for a physician's breach of the duty of confidentiality. *See Brandt v. Medical Defense Assocs.*, 856 S.W.2d 667, 670 (Mo.1993) (en banc) ("By providing specific exemptions to the physician's fiduciary duty of confidentiality, these statutes implicitly acknowledge that, in the absence of such an exemption, there would be a breach of this duty....").

Dr. England claims that in McCormick's attempt to establish a duty of physician-patient confidentiality she failed to recognize §§ 20–7–510 and –550. These statutes are only applicable to reports made to the county department of social services or to a law enforcement agency by persons required or permitted to report child abuse or neglect. The statutes do not directly provide immunity to a physician who writes a "To Whom It May Concern" letter that is submitted in a family court proceeding. It would exceed the legislative intent for this Court to extend these statutes to the disclosure in the present case. *See Singletary v. South Carolina Dep't of Educ.*, 316 S.C. 153, 447 S.E.2d 231 (Ct.App.1994) (all rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the purpose of the statute).

However, the *public policy* of protecting the welfare of children through disclosure by physicians and other professionals, as evidenced in §§ 20–7–510, –540 and –550, should be considered in deciding if Dr. England's disclosures were privileged from the duty of confidentiality. Because this claim for breach of confidence was decided on a motion to strike, the record is incomplete on whether the disclosure was necessary for the protection of the children and we make no comment in this regard. On remand, the court should consider whether under the circumstances Dr. England's disclosures were privileged.

## CONCLUSION

For the foregoing reasons, we hold South Carolina should recognize the common law tort of breach of a physician's duty of confidentiality. Patients have the right to be candid in

644

their disclosures of private information to their physicians without fearing this information will be disseminated throughout the community. However, this right is not absolute and must give way when disclosure is compelled by law or is in the best interest of the patient or others.

### Prospective Application

This decision shall apply only to this case and to causes of action arising after the filing of this opinion. *Ludwick v. This Minute of Carolina, Inc.*, 287 S.C. 219, 337 S.E.2d 213 (1985) (the general rule is that decisions creating new substantive rights have prospective effect only); *Grooms v. Medical Soc'y of South Carolina*, 298 S.C. 399, 380 S.E.2d 855 (Ct.App.1989) (a court decision recognizing a new tort will not be applied to claims that arise before the effective date of the decision).

Without expressing any opinion on the merits of the claim, we REVERSE AND REMAND the case *sub judice* to the circuit court for proceedings consistent with this decision.

CONNOR and HUFF, JJ., concur.