**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Gibbs International, Inc., Respondent,

v.

Sarmad Harake, Eurosa, Inc., and Katherine Harake, Defendants,

of whom Sarmad Harake and Eurosa Inc. are the Appellants.

Appellate Case No. 2020-001642

Appeal From Spartanburg County
Brian M. Gibbons, Circuit Court Judge

Unpublished Opinion No. 2024-UP-385
Heard February 6, 2024 – Filed November 13, 2024

**REVERSED AND REMANDED**

John Thomas Lay, Jr. and Curtis Lyman Ott, of Gallivan, White & Boyd, PA, of Columbia; and Lindsay Anne Joyner, of Gallivan, White & Boyd, PA, of Charleston, all for Appellants.

Kevin A. Dunlap, of Parker Poe Adams & Bernstein, LLP, of Greenville, for Respondent.

**PER CURIAM:**  In this breach of contract action, Sarmad Harake (Harake) and Eurosa, Inc. (Eurosa) (collectively, Appellants) appeal the circuit court's dismissal of their counterclaim for tortious interference with economic interest.  Appellants argue the circuit court erred in dismissing this counterclaim because (1) it included a valid claim for relief, (2) they were not given an opportunity to amend, and (3) the dismissal was based in part on an instruction not to answer certain questions during Harake's deposition, and such information is not part of the analysis under Rules 12(b)(6) and 12(f), SCRCP.  We reverse and remand.

**FACTS AND PROCEDURAL HISTORY**

This matter arose out of a business dispute between Eurosa, which Harake owned, and Gibbs International Inc. (Gibbs).  In March 2017, Gibbs filed a complaint against Eurosa, IOTive, Inc., Harake, and Katherine Harake alleging breach of contract, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, and other claims.[1]  From January 2018, the parties have participated in extensive discovery.

During his deposition, Harake stated Gibbs refused to become financially involved with Paysend UK, another company Harake had acquired.  Harake explained that because he brought Gibbs into Paysend Processing, he was forced to exit Paysend UK when Gibbs refused to take part.  He stated the other investors did not want him involved in Paysend UK while he was in a dispute with Gibbs.  He testified Paysend UK was worth $173 million at the time of his deposition.  While agreeing to produce the documentation regarding a loan, Harake stated, "Actually it will be part of . . . the next phase, because there's a big damage that you caused me.  And – yeah somebody has to be responsible for it."  When asked the amount of his damages, Harake's counsel objected and instructed him not to answer the question on the ground that it related to information protected by the work product doctrine.  Gibbs's counsel argued he had the right to ask the question because Harake raised the issue.  After taking a break, Harake's counsel decided not to withdraw her objection and instruction because Gibb's counsel's questions related to information Harake's counsel considered to be protected by attorney-client privilege and the work product doctrine.

 On August 3, 2020, Gibbs filed its third amended complaint, which included claims for breach of contract and declaratory judgment, breach of the implied

---

[1] Katherine Harake was voluntarily dismissed from the litigation on June 1, 2018, but was brought back into the litigation as part of the third amended complaint.  She is not a party to this appeal.

covenant of good faith and fair dealing, breach of fiduciary duty, accounting, invasion of privacy, conversion, unfair and deceptive trade practices, fraud, civil conspiracy, unjust enrichment, and piercing the corporate veil. In their answer and amended counterclaims, Appellants asserted counterclaims for breach of contract, negligent misrepresentation, unjust enrichment, and tortious interference with economic interest (the fourth counterclaim).

Appellants' counterclaim for tortious interference with economic interest stated Gibbs, Eurosa, and another investor in a company called Paysend Processing came to an agreement on the capital investments Paysend Processing needed. Gibbs agreed to invest $1 million in Paysend Processing. Appellants contended that, despite their agreement, Gibbs later refused to make any investments over $250,000 in Paysend Processing. They also stated Gibbs knew Harake was the appointed director of Paysend UK and had acquired a 100% interest in Paysend UK. They alleged Gibbs's meeting with a potential investor caused the investor to renege on his investment. Appellants also contended Gibbs refused to allow another investor to buy it out of Paysend Processing or to transfer its investment in Paysend Processing to Paysend UK, which would have rolled the two entities into one. Appellants stated Gibbs's unjustified refusal forced Harake to purchase the other investor's shares in Paysend Processing and to divest his shares of Paysend UK. They asserted that if Gibbs had agreed to combine Paysend Processing and Paysend UK, Eurosa would have owned 6.5% of the combined businesses and its shares would have been worth $12 million. They also argued Gibbs's refusal to allow the other investor to buy Gibbs out of Paysend Processing or to roll Paysend Processing into Paysend UK led to Harake's 100% interest in Paysend UK—which would have been worth over $10 million—being diluted to 1.16% because he was unable to participate in the later rounds of investments made by other Paysend UK investors.

Gibbs filed a motion to dismiss and strike the fourth counterclaim, arguing the claim was not recognized in the state of South Carolina. Gibbs states that "[p]ast attempts to bring tortious interference claims in South Carolina have been treated as the tort of intentional interference with contractual relations." Gibbs's motion also requested that the circuit court strike the intentional interference with prospective contractual relations claim that Harake mentioned in his deposition. In its memorandum in support of the motion to dismiss, Gibbs further argued the circuit court should strike the fourth counterclaim because discovery on the issue was wrongfully withheld when Appellants' counsel instructed Harake not to answer questions during his deposition. It further contended Appellants did not bring the fourth counterclaim until after Gibbs amended its complaint in August

2020, despite the fact that Appellants were aware of the possible damages at the time of Harake's deposition in July 2019.

Appellants argued in opposition to Gibbs's motion to dismiss that the label on a cause of action was not dispositive as to whether it was pled sufficiently. They contended that even if the circuit court did not permit the cause of action for tortious interference with an economic interest to proceed, it could disregard the label and consider the fourth counterclaim as a claim for tortious interference with contractual relations. Appellants asserted the fourth counterclaim alleged Gibbs was aware of the existence of a contract requiring him to invest $1 million in Paysend Processing; "refused without justification to meet its obligation under the agreement; acted deliberately to discourage other investment; and refused to be bought out from the agreement in an effort to salvage the company, intentionally causing a breach of the agreement." Appellants further alleged that damages resulted from Gibbs's actions. Appellants also argued they did not file a motion for a protective order after Harake's deposition because Gibbs's counsel never informed them the motion was needed, and the parties' counsel had agreed that if such a motion needed to be filed, the opposing counsel would inform counsel who gave the instruction. Additionally, they argued the instruction given during the deposition did not provide a legal basis for striking the fourth counterclaim because the pleading did not contain "redundant, immaterial, impertinent, or scandalous matter" as required for the circuit court to strike a pleading pursuant to Rule 12(f), SCRCP.[2]

During the motions hearing, Gibbs again argued the circuit court should dismiss the fourth counterclaim because South Carolina does not recognize the claim of tortious interference with economic interest. Gibbs further argued the circuit court should grant his motion to strike the fourth counterclaim pursuant to Rule 12(f), SCRCP, because Appellants' counsel instructed Harake not to answer questions regarding the claim during his deposition. Gibbs' counsel stated he would not oppose Appellants' counsel's statement that the parties had an agreement regarding when to file a motion for a protective order but argued its filing of a motion to strike gave Appellants notice they needed to file a motion for a protective order. Gibbs stated it wanted to ensure it would have the opportunity to depose Harake on the fourth counterclaim, and it noted a motion to compel further testimony from Harake on separate issues was under consideration at the time. Gibbs further

---

[2] Rule 12(f), SCRCP (stating a motion to strike a pleading is proper for any "insufficient defense or any redundant, immaterial, impertinent[,] or scandalous matter").

asserted Appellants labeled the fourth counterclaim as tortious interference with economic interest in their pleadings but were attempting "to slide this over into a claim called intentional inference" because "they recognized that there is a *mens rea* element of intentional interference that heightens what has to be shown [for Gibbs to prevail]."

Appellants argued counsel instructed Harake not to answer the questions during his deposition because they related to information protected by the work-product doctrine and attorney-client privilege. Appellants also noted that when a motion to strike is used to challenge the sufficiency of a pleading, the motion must be analyzed as a Rule 12(b)(6), SCRCP, motion to dismiss, not a Rule 12(f), SCRCP, motion. They contended the fourth counterclaim, which was labeled tortious interference with economic interest, could be analyzed as a claim for tortious interference with contractual relations because they alleged the elements of a tortious interference with contractual relations claim in their pleadings. Appellants stated Harake could be deposed on the fourth counterclaim, but the deposition would be limited to questions about the fourth counterclaim.

At the end of the hearing, the circuit court granted Gibbs's motion to dismiss the fourth counterclaim. Appellants filed a motion to alter or amend before the circuit court issued a written order dismissing the fourth counterclaim. Appellants argued the label on the fourth counterclaim was not dispositive when determining if it was pled sufficiently and that the circuit court could construe the fourth counterclaim as a claim for tortious interference with contractual relations. Appellants also argued Rule 37, SCRCP, could not be the basis for striking the fourth counterclaim because Gibbs did not confer with them before filing the motion as required by Rule 11(a), SCRCP, and they did not fail to comply with an order as required to sanction a party under Rule 37(b)(2)(C). They averred that "when a motion to strike challenges a theory of recovery, the motion is to be treated as a Rule 12(b)(6), SCRCP, motion to dismiss," and therefore Rule 37, could not be the basis for striking the fourth counterclaim. Appellants further asserted that if the circuit court could not allow the claim for tortious interference with economic interest to proceed under the original or revised label, they should be given the opportunity to amend the pleading under *Skydive Myrtle Beach, Inc. v. Horry County*.[3]

---

[3] 426 S.C. 175, 826 S.E.2d 585 (2019) ("When a trial court finds a complaint fails 'to state facts sufficient to constitute a cause of action' under Rule 12(b)(6), the court should give the plaintiff an opportunity to amend the complaint pursuant to

The circuit court issued an order granting Gibbs's motion to dismiss the fourth counterclaim. It held it was proper to dismiss or strike the fourth counterclaim because South Carolina does not recognize a claim for tortious interference with economic interest. The circuit court noted Appellants requested the opportunity to amend the counterclaim at the motion to dismiss hearing but not in their briefing and that the circuit court did not allow an amendment at the hearing. The circuit court also recognized that Appellants argued the fourth counterclaim should be converted to an intentional interference with contractual relations claim, but the circuit court stated it did not redraft the counterclaim at the time of the hearing. The circuit court stated it was undisputed that Appellants failed to file a motion for a protective order within five business days of Gibbs filing its motion to strike or within five business days of the hearing where Gibbs notified Appellants that it based its motion to strike on the instruction not to answer. The circuit court held that Harake's refusal to testify about the basis for the fourth counterclaim justified dismissal "pursuant to Rule 12(b)(6), and/or Rule 12(f), SCRCP." The circuit court issued a separate order denying Appellants' motion to alter or amend without further explanation. This appeal followed.

## ISSUES ON APPEAL

1. Did the circuit court err in dismissing Appellants' fourth counterclaim pursuant to Rules 12(b)(6) and 12(f), SCRCP, when the counterclaim contained allegations that state a valid claim for relief?

2. Did the circuit court err in dismissing Appellants' fourth counterclaim without permitting them an opportunity to amend?

3. Did the circuit court err in dismissing Appellant's fourth counterclaim based on an instruction not to answer questions in Harake's deposition because such information is not part of the analysis under Rules 12(b)(6) and 12(f), SCRCP?

## STANDARD OF REVIEW

"In reviewing the dismissal of an action pursuant to Rule 12(b)(6), SCRCP, the appellate court applies the same standard of review as the trial court." *Doe v. Marion*, 373 S.C. 390, 395, 645 S.E.2d 245, 247 (2007). "A motion to dismiss a counterclaim must be based solely on the allegations set forth in the counterclaim." *Charleston Cnty. Sch. Dist. v. Laidlaw Transit, Inc.*, 348 S.C. 420, 424, 559 S.E.2d

---

Rule 15(a)[, SCRCP,] before filing the final order of dismissal." (quoting Rule 12(b)(6))).

362, 364 (Ct. App. 2001). "If the facts alleged and inferences reasonably deducible therefrom, viewed in the light most favorable to the [claimant], would entitle the [claimant] to relief on any theory, then dismissal under Rule 12(b)(6) is improper." *Doe*, 373 S.C. at 395, 645 S.E.2d at 247. "The counterclaim should not be dismissed merely because the trial court doubts the complainant will prevail in the action." *Charleston Cnty. Sch. Dist.*, 348 S.C. at 424, 559 S.E.2d at 364.

"A motion to strike, challenging a theory of recovery in the complaint, is comparable to a motion to dismiss under Rule 12(b)(6), SCRCP." *Robinson v. Code*, 384 S.C. 582, 585, 682 S.E.2d 495, 496 (Ct. App. 2009). "A court should not strike a cause of action merely because the court doubts the [claimant] will prevail in the action." *Id.* at 585, 682 S.E.2d at 496. "[A motion to strike] cannot be sustained if the facts alleged and the inferences reasonably deducible therefrom would entitle the plaintiff to any relief on any theory of the case." *McCormick v. England*, 328 S.C. 627, 633, 494 S.E.2d 431, 433 (Ct. App. 1997). "The question is whether in the light most favorable to the [claimant], and with every reasonable doubt resolved in her behalf, the complaint states any valid claim for relief." *Id.* at 633, 494 S.E.2d at 433-34.

## LAW AND ANALYSIS

### I. Valid Claim for Relief

Appellants argue the circuit court erred in dismissing the fourth counterclaim because it stated a valid claim for relief. They assert the dismissal was based on the title of the fourth counterclaim, not the substance of the law. They contend that even if no cause of action exists in South Carolina for "tortious interference with an economic interest," this court should "consider whether the substantive allegations [within] that counterclaim state any valid claim or theory of relief – such as for tortious interference with contractual relations." Appellants argue the elements of a claim for tortious interference with contractual relations were pled. We agree.

We hold the circuit court erred in dismissing the fourth counterclaim because, viewed in the light most favorable to Appellants, the fourth counterclaim included facts sufficient to support a cause of action for intentional interference with contractual relations. *See Doe*, 373 S.C. at 395, 645 S.E.2d at 247 ("If the facts alleged and inferences reasonably deducible therefrom, viewed in the light most favorable to the [claimant], would entitle the [claimant] to relief on any theory, then dismissal under Rule 12(b)(6) is improper."). In the fourth counterclaim, which was labeled "tortious interference with economic interest," Appellants alleged Gibbs knew Harake was appointed as a director of, and had acquired a 100% interest in,

Paysend UK. The counterclaims stated Gibbs refused without justification to allow another investor to buy it out of Paysend Processing or to roll Paysend Processing into Paysend UK, and this decision damaged Appellants because it forced Harake to divest his shares in Paysend UK. Therefore, we hold Appellants' pleadings included the elements required for an intentional interference with contractual relations claim despite the fact that it was labeled as a claim for tortious interference with economic interest. *See Kinard v. Crosby*, 315 S.C. 237, 240, 433 S.E.2d 835, 837 (1993) ("To establish intentional interference with a contractual relationship[,] the plaintiff must prove: (1) a contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) the damage resulting therefrom."); *see also Camp v. Springs Mortg. Co.*, 310 S.C. 514, 426 S.E.2d 304 (1992) (listing the same elements for a tortious interference with a contract cause of action as those required for an intentional interference with a contractual relationship cause of action); *Prior v. S.C. Med. Malpractice Liab. Ins. Joint Underwriting Ass'n*, 305 S.C. 247, 249, 407 S.E.2d 655, 657 (Ct. App. 1991) (per curiam) (providing the court, in examining the complaint, must look beyond the labels describing the acts to the acts themselves that form the basis of the claim). Accordingly, we hold the circuit court erred in dismissing Appellants' fourth counterclaim under Rule 12(b)(6).

## II. Opportunity to Amend

Appellants argue the circuit court erred in dismissing the fourth counterclaim without giving them the opportunity to amend the claim pursuant to *Skydive*. They contend the amendment was not futile and that allowing the amendment would not amount to undue delay or put Gibbs at a disadvantage in defending the merits. Because we hold that the circuit court erred in dismissing Appellant's fourth counterclaim when they alleged facts that would support a claim for intentional interference with contractual relations, this court need not address this issue. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (providing an appellate court need not address the appellant's remaining issues when its determination of a prior issue is dispositive of the appeal).

## III. Instruction not to Answer Deposition Question

Appellants argue the circuit court erred in basing its dismissal of the fourth counterclaim in part on their failure to file a motion for a protective order following counsel's instruction for Harake not to answer a question regarding privileged information during his deposition. They contend striking the fourth counterclaim pursuant to Rules 12(b)(6) and 12(f), SCRCP was improper because

it "conflated a discovery dispute with a dismissal standard." They also aver the circuit court erred because Gibbs did not identify an order they violated and the circuit court did not determine such an order existed when striking the claim pursuant to Rule 12(f). We agree.

Rule 30(j)(3), SCRCP, states

> Counsel shall not direct or request that a witness not answer a question, unless that counsel has objected to the question on the ground that the answer is protected by a privilege or a limitation on evidence directed by the court or unless that counsel intends to present a motion under Rule 30(d), SCRCP. . . . Counsel directing that a witness not answer a question on those grounds or allowing a witness to refuse to answer a question on those grounds shall move the court for a protective order under Rule 26(c), SCRCP, or 30(d), SCRCP, within five business days of the suspension or termination of the deposition. Failure to timely file such a motion will constitute waiver of the objection, and the deposition may be reconvened.

(footnote omitted). "Violation of this rule may subject the violator to sanctions under Rule 37, SCRCP." Rule 30(j)(9), SCRCP. "Actions taken in a deposition designed to prevent justice, delay the process, or drive up costs are improper and warrant sanctions." *In re Anonymous Member of S.C. Bar*, 346 S.C. 177, 194, 552 S.E.2d 10, 18 (2001). "In addition to their traditional contempt powers, judges may issue orders as a sanction for improper deposition conduct . . . striking out pleadings or parts thereof . . . ." *Id.*; Rule 37(b)(2)(C) (stating the court may make an order striking out pleadings if a party fails to comply with an order to permit discovery).

"A court must consider four factors when determining the appropriate discovery sanction: the nature of discovery sought, the discovery stage of the case, willfulness, and the degree of prejudice." *Richardson ex rel. 15th Cir. Drug Enf't Unit v. Twenty-One Thousand & no/100 Dollars ($21,000.00) U.S. Currency & Various Jewelry*, 430 S.C. 594, 600, 846 S.E.2d 14, 17 (Ct. App. 2020). "If the court does not consider these factors, an abuse of discretion occurs." *Id.*

In their reply brief, Appellants argue that Gibbs's motion pursuant to Rule 37, SCRCP, should not be considered as an additional sustaining ground because

Gibbs failed to consult with Appellants before filing its motion to strike as required by Rule 11, SCRCP.

> All motions filed shall contain an affirmation that the movant's counsel prior to filing the motion has communicated, orally or in writing, with opposing counsel and has attempted in good faith to resolve the matter contained in the motion, unless the movant's counsel certifies that consultation would serve no useful purpose, or could not be timely held.

Rule 11, SCRCP. "The penalty for noncompliance [with Rule 11] is to strike the motion unless the attorney promptly amends the document to comply with the rule." *Jackson v. Speed*, 326 S.C. 289, 310, 486 S.E.2d 750, 761 (1997). In *Jackson*, our supreme court held the circuit court did not abuse its discretion in refusing to strike the motion for attorney's fees because its finding that consultation would have been pointless was adequate to cure the deficiency under the facts of the case. *Id.* at 310-11, 486 S.E.2d at 761.

We hold the circuit court did not abuse its discretion in considering Gibbs's argument regarding sanctions under Rule 37, SCRCP. We acknowledge Gibbs failed to consult with Appellants in an effort to resolve the issue before filing the motion to dismiss, but we hold such efforts would have likely been futile considering Gibbs's motion was to dismiss Appellants' fourth counterclaim due to their failure to file a motion for a protective order.[4] Although the circuit court did not make a specific ruling excusing Gibbs's Rule 11 violation, the circuit court's denial of Appellant's motion to alter or amend, which included their argument that Gibbs did not consult with them before filing its motion to strike as required by Rule 11, implicitly found consultation with opposing counsel would be futile. *See* Rule 11, SCRCP (requiring "[a]ll motions filed shall contain an affirmation that the movant's counsel prior to filing the motion has communicated, orally or in writing, with opposing counsel and has attempted in good faith to resolve the matter . . . unless the movant's counsel certifies that consultation would serve no useful purpose, or could not be timely held"); *Jackson*, 326 S.C. at 310-11, 486 S.E.2d at 761 (holding the circuit court did not abuse its discretion in refusing to strike the

---

[4] Gibbs did not raise the argument that dismissal of the fourth counterclaim was an appropriate sanction under Rule 37, SCRCP, in the motion to dismiss, but instead raised it in its memorandum supporting the motion, which it filed the day of the hearing.

motion for attorney's fees because its finding that consultation would have been pointless was adequate to cure the deficiency under the facts of the case).

However, we hold the circuit court erred in striking the fourth counterclaim based on Rule 37, SCRCP. *See* Rule 37(b)(2)(C), SCRCP (stating the court may make an order striking out pleadings if a party fails to comply with an order to permit discovery). First, we hold Appellants likely did not violate Rule 30(j)(3) when Appellants' counsel instructed Harake not to answer questions during his deposition because the questions related to information counsel asserted was protected by the work-product doctrine and attorney-client privilege. *See* Rule 30(j)(3), SCRCP ("Counsel shall not direct or request that a witness not answer a question, unless that counsel has objected to the question on the ground that the answer is protected by a privilege. . . ."). Second, we hold Appellants' counsel's failure to file a motion for a protective order after instructing Harake not to answer questions during his deposition entitled Gibbs to reconvene the deposition to question Harake further on the issues, as permitted by Rule 30(j)(3), but it did not warrant sanctions. *See* Rule 30 (j)(3) (stating that counsel instructing a witness not to answer a question during a deposition must file a motion for a protective order within five days, and failure to do so constitutes a waiver of the objection and allows the deposition to reconvene). There is no indication in the record that Gibbs attempted to reconvene the deposition to further question Harake about the damages related to the fourth counterclaim. Additionally, even if the circuit court's finding that Appellants' behavior required sanctions was correct, we hold the circuit court abused its discretion in striking the fourth counterclaim because it failed to consider the four factors for determining the appropriate discovery sanction as required. *See Richardson*, 430 S.C. at 600, 846 S.E.2d at 17 ("A court must consider four factors when determining the appropriate discovery sanction: the nature of discovery sought, the discovery stage of the case, willfulness, and the degree of prejudice."); *id.* ("If the court does not consider these factors, an abuse of discretion occurs."). We also note that Gibbs failed to inform Appellants they needed to file a motion for a protective order despite the fact that Appellants and Gibbs had agreed that if such a motion needed to be filed, the opposing counsel would inform counsel who gave the instruction. Accordingly, we hold the circuit court erred in basing its decision to dismiss the fourth counterclaim on Appellants' failure to file a motion for a protective order.

## CONCLUSION

Based on the foregoing, the circuit court's grant of Gibbs's motion to dismiss Appellants' fourth counterclaim is

**REVERSED AND REMANDED.**

**GEATHERS, HEWITT, and VINSON, JJ., concur.**