#27390-a-SLZ
**2015 S.D. 98**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

MOLLY R. NYLEN and
BRENDON W. NYLEN,                          Plaintiffs and Appellees,

v.

MARY ELLEN NYLEN,                          Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
UNION COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE STEVEN R. JENSEN
Judge

\* \* \* \*

DAVID A. TANK of
Dorsey & Whitney LLP
Des Moines, Iowa

          and

DANIEL R. FRITZ
NICOLE O. TUPMAN of
Lindquist & Vennum, PLLP
Sioux Falls, South Dakota                  Attorneys for plaintiffs
                                           and appellees.


STEVEN L. PIER
THOMAS P. REYNOLDS
CRAIG A. KENNEDY of
Kennedy, Pier, Knoff, Loftus, LLP
Yankton, South Dakota                      Attorneys for defendant
                                           and appellant.

\* \* \* \*

ARGUED ON
OCTOBER 5, 2015
OPINION FILED **12/16/15**

#27390

ZINTER, Justice

[¶1.]        During the time that Mary Ellen Nylen was involved in three lawsuits, she talked and shared documents with a friend who was an attorney.  Mary Ellen later claimed that the discussions and documents were privileged attorney-client communications.  The circuit court ruled that the privilege applied until Mary Ellen could no longer reasonably believe she was the attorney's client.  The court also ruled that Mary Ellen waived the privilege to the extent that she shared otherwise privileged documents with her friend.  We affirm.

*Facts and Procedural History*

[¶2.]        In 1991, Sioux City attorney Irene Schrunk represented Mary Ellen in a divorce.  Over the ensuing years, Schrunk and Mary Ellen developed a friendship and communicated regularly about various matters.  Schrunk was also involved with Mary Ellen's will, she provided legal services to Mary Ellen's subsequent husband (Mark Nylen), and she participated on the board of the Mark and Mary Ellen Nylen Foundation.

[¶3.]        In 2013, family problems involving Mary Ellen and her children spilled over to marital problems between Mary Ellen and Mark.  Because of these problems, Mary Ellen moved out of her California home in December 2013.  She also contacted Schrunk for legal advice because she expected Mark would file for divorce.  On January 1, 2014, Mark served Mary Ellen with a summons and complaint for divorce.  That same day, Mary Ellen went to Schrunk's personal residence.  During their conversation, Schrunk advised Mary Ellen that Schrunk could not represent her because Schrunk had represented Mark in the past.

#27390

[¶4.]        On July 31, 2014, Molly and Brendon Nylen (Mary Ellen's adult children) commenced the action that underlies this appeal against Mary Ellen. They sought a declaration that in December 2013, Mary Ellen had gifted them personal property. Molly also filed an action for a restraining order against Mary Ellen in California.

[¶5.]        On November 18, 2014, Molly and Brendon's attorney deposed Mary Ellen in this gift dispute. The following exchange occurred regarding Schrunk's purported role as Mary Ellen's attorney:

> [**Attorney**]: So you don't have a current attorney/client relationship with [Schrunk]?
>
> [**Mary Ellen**]: No.
>
> [**Attorney**]: And when you spoke to [Schrunk] most recently about either the divorce or the kids; claims against you, she wasn't representing you?
>
> [**Mary Ellen**]: No.
>
> [**Attorney**]: What was your purpose for contacting [Schrunk]?
>
> [**Mary Ellen**]: She's a friend.
>
> [**Attorney**]: And what did you discuss with [Schrunk]?
>
> [**Mary Ellen**]: We exchanged e-mails. We - - politics [sic], what's going on in Sioux City, our family.

[¶6.]        Phone records confirmed numerous communications between Mary Ellen and Schrunk during a time that Molly and Brendon believed was relevant to the gift dispute. Based on those records and Mary Ellen's denial of an attorney-client relationship, Molly and Brendon subpoenaed documents and sought to depose Schrunk regarding communications she had with Mary Ellen between November 1, 2013, and December 31, 2014.

[¶7.]        Mary Ellen moved to prohibit the discovery claiming that the attorney-client privilege protected the communications. In a subsequent evidentiary hearing

to resolve the privilege dispute, Mary Ellen acknowledged that she did not formally retain Schrunk and Schrunk had not charged a fee. However, Mary Ellen testified that Schrunk was her attorney since 1991, and contrary to her deposition testimony, her purpose in communicating with Schrunk was to obtain legal representation and advice. Mary Ellen admitted that Schrunk told her that Schrunk could not "represent" her; however, Mary Ellen claimed that she misunderstood the meaning of representation. Mary Ellen testified that Schrunk told her "that she would help me in any way she could and she would continue to give me legal advice." Mary Ellen also claimed that she "did consider [herself] to be a client of Irene Schrunk at that time," and that she had been getting legal advice from Schrunk for "months." In conjunction with the evidentiary hearing, the court ordered Mary Ellen to submit a privilege log with the disputed documents for an *in camera* review.

[¶8.] After the hearing and review of the documents, the circuit court found that Schrunk was not representing Mary Ellen between November 1, 2013 and December 31, 2014. However, the court ruled that because Mary Ellen initially contacted Schrunk, not only as a friend, but also with a view to obtain legal services, the initial communications were privileged. Although the court ruled that the initial communications were privileged, the court did not extend the privilege to communications after January 1, 2014. The court found that on that day, Schrunk told Mary Ellen that Schrunk could not represent her, and Mary Ellen admitted that she understood Schrunk could not represent her. The court ultimately found that as of January 1, 2014, Mary Ellen could no longer have reasonably believed she

was Schrunk's client; and therefore, the attorney-client privilege no longer applied. Further, the court found that some of the communications between Mary Ellen and Schrunk included privileged documents involving Mary Ellen and her California and South Dakota attorneys. Although the documents involving those attorneys were privileged, the court ruled that Mary Ellen waived the privilege to the extent that she shared the documents with Schrunk. Thus, the court permitted the discovery to proceed with respect to the post-January 1, 2014 communications and documents shared with Schrunk.

[¶9.]     Mary Ellen appeals the circuit court's finding that the attorney-client privilege did not apply after January 1, 2014. If the privilege did apply, Mary Ellen contends that she did not waive the privilege by sharing the documents with Schrunk.

*Decision*

*Attorney-Client Privilege*

[¶10.]     In order to claim the attorney-client privilege, Mary Ellen must establish that she was Schrunk's "client." *See* SDCL 19-19-502(b)(1).[1] Client status is established in one of two ways. "A 'client' is a person . . . who is rendered

---

1.     "A *client* has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client [between herself] . . . and [her] lawyer." SDCL 19-19-502(b)(1) (emphasis added). Thus, four elements are required to establish the privilege: (1) a client, (2) who made confidential communications, (3) to facilitate the rendition of professional legal services to the client, (4) between the client and the attorney. *See Voorhees Cattle Co., LLP v. Dakota Feeding Co., LLC*, 2015 S.D. 68, ¶ 10, 868 N.W. 2d 399, 405.

professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from [her]." SDCL 19-19-502(a)(1).

[¶11.]     Here, Mary Ellen's testimony regarding her relationship with Schrunk is contradictory. At the deposition, Mary Ellen testified that there was no attorney-client relationship; Schrunk was not representing her and her purpose for contacting Schrunk was as a friend. She also testified that the topic of her communications involved politics and family. On the other hand, after Schrunk was subpoenaed, Mary Ellen testified during the evidentiary hearing that her purpose in communicating with Schrunk was to obtain legal services; that Schrunk had been providing her with legal advice for "months"; that Schrunk told her she would continue to provide legal advice after January 1, 2014; and that she considered herself Schrunk's client. Mary Ellen did, however, admit that Schrunk told her she could not represent her. Further, Mary Ellen acknowledged that she did not formally retain Schrunk and Schrunk did not charge a fee.

[¶12.]     Faced with Mary Ellen's conflicting claims regarding her relationship with Schrunk, the circuit court weighed the evidence and rejected the inconsistent claims that Mary Ellen made at the evidentiary hearing. The circuit court found that Mary Ellen understood in January 2014 that Schrunk would not represent her, and thereafter, Mary Ellen could no longer reasonably believe that she was Schrunk's "client." *See* SDCL 19-19-502(a)(1). Fairly read, the court's findings reflect that it rejected Mary Ellen's claim that Schrunk told Mary Ellen that Schrunk "would continue to give [Mary Ellen] legal advice."

[¶13.]    Mary Ellen argues that the circuit court's findings are clearly erroneous because: (1) when she testified in her deposition that Schrunk was not "representing" her, she believed the word "representation" only meant attorneys who appear with a client in the courtroom; (2) Schrunk told her that Schrunk would continue to give her legal advice regarding any of her legal issues; and (3) Schrunk continued to provide her with legal advice. Therefore, Mary Ellen argues that she considered herself a client throughout 2014. *See State v. Catch the Bear*, 352 N.W.2d 640, 645 (S.D. 1984) (The privilege hinges on the client's reasonable belief that she is consulting a lawyer to obtain professional legal services.). Consequently, the privilege question on appeal involves the same disputed question of fact that was presented to the circuit court: which version of Mary Ellen's testimony was most credible—the version given in her deposition or the version given at the evidentiary hearing?

[¶14.]    The circuit court was the best situated to resolve this factual dispute. *See State v. Rickabaugh*, 361 N.W.2d 623, 624 (S.D. 1985) (upholding the trial court's factual findings in suppressing statements based on the attorney-client privilege). We will not disturb the circuit court's factual findings unless they are "against a clear preponderance of the evidence or not supported by credible evidence." *Id.* Although there are two versions of the evidence, the circuit court's findings were supported by Mary Ellen's own admission that she understood Schrunk could not represent her, she had no attorney-client relationship with Schrunk, and that she contacted Schrunk as a friend. Moreover, the circuit court reviewed the documents *in camera* and still found that after January 1, 2014, Mary

Ellen could no longer have reasonably believed she was consulting Schrunk with a "view to obtain[] legal services." *See* SDCL 19-19-502(a)(1). Furthermore, the court did not find that Schrunk was "render[ing] professional legal services." *See id.* Of the 332 pages of communications submitted to the circuit court for *in camera* review, only one document reflects the rendition of legal services—a Schrunk memo. Schrunk authored the memo on December 10, 2013, before Mary Ellen admitted to understanding that Schrunk could not represent her. Accordingly, the circuit court found this memo was privileged. Although Mary Ellen asserts that Schrunk continued to provide her legal advice after their January 1, 2014 meeting, Mary Ellen failed to meet her burden of showing that Schrunk actually continued to provide any legal advice. *See Catch the Bear*, 352 N.W.2d at 645 ("The burden of showing entitlement to [] the privilege rests with its claimant.").

[¶15.] Mary Ellen, however, points out that Molly and Brendon instituted this gift litigation six months after Schrunk told her that Schrunk could not represent her. Mary Ellen also points out that Mark is not a party in this gift suit. Thus, she argues that Schrunk only declined to represent her in the divorce.

[¶16.] This argument is merely another attack on the factual findings of the circuit court. Moreover, Mary Ellen's argument is undercut by the fact that all three of the suits arise out of the same facts and are an extension of the same family controversy and the divorce. The record reflects that Mark insisted Mary Ellen leave the California home, where Molly lived, because he believed Mary Ellen had not been appropriately supportive of Molly's problems. Mary Ellen left the California home and allegedly told Molly and Brendon that they could have the

personal property that she left behind. Shortly thereafter, Mark filed for divorce. A review of the sealed documents indicates that the gift dispute arose because Mary Ellen subsequently indicated she might contest the exclusion of the disputed personal property from the court's equitable division of the marital estate in the divorce action. It appears that Mark wanted to keep that property separate for the children. It also appears that Molly's request for a restraining order in California arose because Mary Ellen insisted on contacting Molly after Mark asked Mary Ellen to leave the California home. Finally, it appears that Mary Ellen's problems with Molly may have been a factor leading to the divorce. Because the claims in all three suits appeared to involve interrelated facts, Mary Ellen cannot claim that Schrunk was not representing her against Mark in the divorce, but was simultaneously representing her in the other suits.

[¶17.] Mary Ellen's reliance on *Parnes v. Parnes*, 80 A.D.3d 948 (N.Y. App. Div. 2011) is misplaced. *Parnes* involved a husband who contacted a friend and attorney in anticipation of divorce. *Id.* at 949. The husband and attorney exchanged emails discussing litigation strategy for the impending divorce and custody dispute. *Id.* The husband testified that he contacted the attorney/friend to seek legal advice. *Id.* at 950. The court concluded that the attorney-client privilege protected the emails from discovery because the court found there was an attorney-client relationship. "The context of the e-mails show[ed that the attorney] was giving legal advice, sent from his law firm e-mail address, and billed [Husband] for his time." *Id.* Therefore, *Parnes* is inapposite.

#27390

[¶18.]     We affirm the circuit court's factual findings. The findings support the court's conclusion that Mary Ellen failed to meet her burden of proving entitlement to the privilege after January 1, 2014. Because Mary Ellen was not a client within the meaning of SDCL 19-19-502(a)(1), she cannot assert the attorney-client privilege under SDCL 19-19-502(b)(1).[2]

*Waiver*

[¶19.]     The attorney-client privilege is waived if the holder of the privilege "voluntarily discloses . . . any significant part of the privileged matter." SDCL 19-19-510. "Thus a lawyer-client privilege may be waived if the client voluntarily . . . discloses the contents of the communication or advice to someone outside that relationship." *Catch the Bear*, 352 N.W.2d at 647.

[¶20.]     In conducting its *in camera* review, the circuit court noted that some of the documents Mary Ellen shared with Schrunk were privileged communications between Mary Ellen and her South Dakota and California attorneys. The court, however, ruled that Mary Ellen waived her privilege with respect to these documents when she shared them with Schrunk. Mary Ellen appeals, pointing out that the privilege protects communications made "among lawyers . . . representing the same client" for the purposes of facilitating legal services. *See* SDCL 19-19-502(b)(5).

_____

2.     Because Mary Ellen failed to make the threshold showing that she was a "client" under SDCL 19-19-502(a)(1), we do not address the court's alternative ruling that Mary Ellen's communications after January 1, 2014 were not made "for the purpose of facilitating the rendition of professional legal services." *See* SDCL 19-19-502(b)(1) (providing that the privilege may only be asserted with respect to "communications made for the purpose of facilitating the rendition of professional legal services to the client").

-9-

[¶21.]     Mary Ellen's waiver argument presupposes that Mary Ellen was Schrunk's client thereby establishing an attorney-client relationship.  However, we previously concluded that the court did not err in finding that Mary Ellen failed to meet her burden of proving that she was Schrunk's client after January 2014.  Therefore, Mary Ellen waived the privilege when she shared the documents with Schrunk.

[¶22.]     GILBERTSON, Chief Justice, and SEVERSON, WILBUR, and KERN, Justices, concur.